THE STATE *ex informatione* CROW, *Attorney-General*, ROMBAUER, *Applicant*, v. BLAND, *Judge*.

In Banc, June 14, 1898.*

1. **Elections:** JUDICIAL NOTICE. This court takes judicial notice of such events as constitute a part of the political history of this country and State.

2. ———: CORRUPT PRACTICES ACT: FUSION. The Corrupt Practices Act of March 31, 1893, does not prohibit fusion between political parties. So that a petition whose allegations are tantamount to a charge of fusion between the Democratic and Populist parties whereby one North withdrew as a Populist candidate for a public office, in consequence of a promise of the payment of money or the appointment to office of North, and whereby the name of one Bland, who was the Democratic candidate for the same office, was substituted on the Populist ticket in place of North's name, does not state a cause of action under the sections of said act prescribing a penalty for the *bribery of voters.*

*NOTE.—Decided May 10, 1898; rehearing denied June 14, 1898.

3. ——: ——: ——: BRIBERY OF VOTERS: CAUSE OF ACTION. The alleged payment of money by Bland, the Democratic candidate for judge of an appellate court, to Cook, the chairman of the Democratic committee, to be used in securing the withdrawal of North, the Populist candidate for the same office; the alleged payment of money to the Populist committee to secure the substitution of Bland's name in place of North's on the Populist ticket; the alleged promise of Bland to North to appoint him reporter of the court if he would withdraw from said Populist ticket in his favor; and the alleged promise by Bland to Bond, another judge of the court, to permit him to appoint the other officers of the court if Bond would aid him in having North appointed reporter and in otherwise carrying out his agreement with North, do not amount to a charge of a *bribery of voters*, and consequently a petition alleging these matters does not state a cause of action under the Corrupt Practices Act of 1893. (BRACE and ROBINSON, JJ., dissenting).

4. ——: ——: WITHDRAWAL OF CANDIDATE. The Corrupt Practices Act of 1893 does not prohibit any person from inducing another to withdraw as a candidate for office in consideration of payment or promise of payment of money, and this court will not enlarge the act to include such things.

5. ——: ——: SPENDING OF MONEY BY OTHERS AT ELECTIONS. The spending of money by others without the knowledge or consent of a candidate for office does not work a forfeiture of the office.

6. ——: ——: PROCEEDING EX INFORMATIONE TO OUST OFFICER. Under the Corrupt Practices Act of 1893 the Attorney-General has no right or power *ex officio* of his own motion to institute a proceeding to oust one who has been elected to an office by a plurality of the votes of the district. Nor is such a proceeding, instituted by him on the application of the defeated candidate, who is required by the act to specify the charge, make affidavit thereto, and give bond, a *quo warranto* proceeding instituted by the Attorney-General *ex officio*, because when these preliminaries are taken by the defeated candidate the Attorney-General *must* institute the action. Therefore a petition, founded on the Corrupt Practices Act, that alleges the defendant is usurping a public office, does not state a good cause of action under the rule that the Attorney-General has a constitutional right *ex officio* to institute a *quo warranto* proceeding to oust one who is usurping an office without specifying the grounds on which he is illegally holding the same.

7. ——: ——: ——: ENABLING STATUTE. And the fact that section 11 of said act provides that the action thereunder shall be according to the rules prescribed by law for an action against an usurper of an office, does not change the action from a proceeding under the statute to a common law proceeding by *quo warranto*.

8. ——: ——: ——: GROUNDS OF OUSTER: PLEADING. The Attorney-General in bringing an action to oust an officer under the Corrupt Practices Act, is limited to the charges of "violation of the laws concerning elections" *preferred by the defeated applicant.*

9. Practice: PETITION: FAILURE TO STATE A CAUSE OF ACTION. Where a petition fails to state a cause of action, it is immaterial whether the parties raise the question by demurrer or by answer or refuse to raise it at all.

*Proceeding Under Corrupt Practices Act.*

DEMURRER SUSTAINED.

*John M. Wood, R. L. Goode, Adiel Sherwood* and ·*John H. Overall* for respondent.

(1)   The information does not state facts sufficient to constitute a cause of ouster of respondent under the act of March 31, 1893, admitting everything alleged to be true.   And the demurrer should be sustained because:   *First.*   It is necessary for the Attorney-General to make a case by the allegations of his information as much so as for any other pleader. Inasmuch as the Attorney-General has undertaken to set out the grounds of disqualification, he must set out sufficient grounds.   Besides, as this is a proceeding under the statute to oust the incumbent, the causes must be stated therein, and inasmuch as the statute prescribes the mode in which this must be done and the causes therefor there can be no reference to the common law to aid in the task.   Further, this is not a common law proceeding for the reason that the Attorney-General can not act of his own motion, but must await the pleasure of the defeated candidate.   Hence, the information is bad because it does not allege facts which show that respondent is disqualified or that the election was not a legal election. The information is not one at common law for the additional reason that Rombauer is in as a party plaintiff under the provisions of

the act. Statutory causes and methods are exclusive. *Anderson v. Gould*, 6 Mass. 40; *Franklin Co. v. White*, 14 Mass. 286; *Dudley v. Mayhew*, 3 N. Y. 15; *Vestry v. Batterbury*, 2 C. B. (N. S.) 486; *Edwards v. Davis*, 16 Johns. 281; *Almy v. Harris*, 5 Johns. 175; *Smith v. Lockwood*, 13 Barb. 209; *Brown v. Grover*, 6 Bush (Ky.), 1; *Com. v. Sutherland*, 3 Serg. and R. (Pa.) 145. A private relator can not be joined in *quo warranto* with the Attorney-General. *State v. Summer's Point*, 46 N. J. L. 515. Specific facts and illegal acts are not alleged. *Rex v. Pinney*, 3 B. and Ad. 947; *Mayor v. Shaw*, 16 Ga. 187; *King v. Mashiter*, 6 Adolph. & E. 153; *State v. Lupton*, 64 Mo. 415. No facts to show election illegal. *Inhabits, Etc., v. Stearns*, 21 Pick. 154; *In re McCullough*, 12 Phila. 570; *Trustees v. Gibbs*, 2 Cush. 39; *Rex v. Jefferson*, 2 N. and M. 487; *State ex rel. v. Humphries*, 74 Tex. 466; *Queen v. Cousins*, L. R. 8 Q. B. 216; *State ex rel. v. Bruggemann*, 20 Atl. Rep. 731; *People ex rel. v. Thornton*, 25 Hun. 456. *Second.* The first, second, third and fourth counts of the information do not show that voters were corrupted or that any money, reward or influence was promised to the voters. *Lehlbach v. Haynes*, 45 N. J. L. 81; *Griffin v. Wall*, 32 Ala. 149; *Preston v. Culbertson*, 58 Cal. 211; *People v. Glenn County*, 100 Cal. 419; *Todd v. Stewart*, 14 Col. 286; *State v. Krueger*, 134 Mo. 271; *State v. Miller*, 132 Mo. 300. *Third.* In view of our other statutes punishing bribery at elections with forfeiture of office upon conviction of the offense (R. S. 1889, sec. 3734) with which the "corrupt practices act" is *in pari materia*, a prior conviction is necessary before a judgment of ouster of respondent for bribery can be entered under the latter act. The two statutes must be so construed as to make a harmonious, consistent system of election laws. Hence, the information must by certain and specific

averments show such a prior conviction or in lieu thereof a change of sufficient votes by corrupt practices prohibited by the terms of the act, to change the result of the election. Prior conviction necessary. *State ex rel. v. Humphries*, 74 Tex. 466; *Com. v. Jones*, 10 Bush, 725; *Huber v. Reiley*, 53 Pa. St. 112; *State v. Symonds*, 57 Maine, 148; *Burkett v. McCarthy*, 10 Bush (Ky.), 758; *Page v. Hardin*, 8 B. Mon. (Ky.) 648; *Curry v. Stewart*, 8 Barb. (N. Y.) 560; *Hyde v. State*, 52 Miss. 665; *Honey v. Graham*, 39 Tex. 1; *Pitts v. Pitts*, 52 N. Y. 593; *Schiffer v. Pruden*, 64 N. Y. 47; *Blanfus v. People*, 69 N. Y. 109; *Barber v. People*, 20 John. 457; *Royal v. Thomas*, 28 Gratt. (Va.) 130. Sufficient votes to change result. *Rex v. Jefferson*, 2 N. & M. 487; *State ex rel. v. Pritchard*, 36 N. J. L. 106; *Inhabits., Etc., v. Stearns*, 21 Pick. 154; *In re McCullough*, 12 Phila. 570; *Trustees v. Gibbs*, 2 Cush. 39; *State ex rel. v. Humphries*, 74 Tex. 466; *Queen v. Cousins*, L. R. 8 Q. B. 216; *State ex rel. v. Bruggemann*, 20 Atl. Rep. 731; *People ex rel. v. Thornton*, 25 Hun. (N. Y.) 456. Even admitting that section eleven applies. *Stine v. Berry*, 27 S. W. Rep. 809. *In pari materia.* Porter's Dwarris on Stat. 189; *State v. Klein*, 116 Mo. 264; Sedgwick Const. and Stat. Law, 209; Sutherland, Stat. Const., secs. 283, 284, 350; *St. Louis v. Howard*, 119 Mo. 41; *Rex v. Loxdale*, 1 Burr. 147; 1 Kent. Com. 463, 464; *Ex parte Joffer*, 46 Mo. App. 360; *Pitt v. Bishop*, 53 Mo. App. 600; *State v. Daily*, 49 Mo. App. 184; *Kansas City v. Barker*, 54 Mo. App. 60.

*Edward C. Crow*, Attorney-General, for the State, and *Chester H. Krum* for applicant.

(1) Taking the grounds of the demurrer in the order in which they are stated by the defendant it is submitted, on the part of the State, that the several

charges contained in the information do constitute grounds within the provisions of the act of thirty-first of March, 1893, for ousting the defendant from office. Section 1 of the act provides, *first*, that every person who shall directly or indirectly, by himself or by any other person on his behalf, give, lend or agree to give or lend, or shall offer or promise to procure or endeavor to procure any money or valuable consideration to or for any other person in order to induce any voter to vote or refrain from voting, or shall corruptly do any such act, as aforesaid, on account of such voter having voted or refrained from voting at any election, shall be ousted, etc. *Second.* That every person who shall directly or indirectly by himself, or by any other person on his behalf, give or procure, or agree to give or procure, or offer or promise to procure, or endeavor to procure any office, place or employment, public or private, to or for any voter or to or for any person on behalf of any voter, or to or for any other person, in order to induce such voter to vote or refrain from voting, or shall corruptly do any such act as aforesaid on account of any voter having voted or refrained from voting at any election. *Third.* Every person who shall directly or indirectly, by himself or any other person on his behalf, make any such gift, loan, offer, promise, procurement or agreement, as aforesaid, to for any person in order to induce such person to procure or endeavor to procure the election of any person to a public office, or the vote of any voter at any election. *Fourth.* Every person who shall upon or in consequence of any such gift, loan, offer, promise, procurement or agreement, procure or engage, promise, or endeavor to procure the election of any person to a public office or the vote of any voter at any election. *Fifth.* Every person who shall advance or pay or cause to be paid any money to or for the use of any other

person, with the intent that such money or any part thereof shall be expended in bribery at any election, or who shall unlawfully pay or caused to be paid any money wholly or in part, expended in bribery at any election; and any such person so offending shall be guilty of a felony. (2) Section 11 of the statutes provides that such action shall be deemed to be and shall be conducted according to the rules prescribed by law for an action against the usurper of an office or franchise. Accordingly the information recites or alleges the fact that the defendant at the election for judge of the court of appeals, where he was a candidate, received, according to the official count, the highest number of votes, but that Roderick E. Rombauer received the next highest number, and the information recites that the said Rombauer filed with the Attorney-General the complaint required by the statutes accompanied by the requisite bond and specifying certain violations of the act of March 31, 1893, which are set forth in the present complaint. (3.) For the purpose of answering the first ground of demurrer, which is general in its nature, it will be sufficient to say that the various charges as laid in the information, constituted a violation of the provisions of section 10 of the act. It is proper to observe in this connection, however, that independently of any other consideration the information sufficiently, in a general way, states a complete cause of action, or constitutes in itself a formal information at common law, which is sufficient for the purpose of a *quo warranto*. It is submitted on the part of the State that these averments in themselves constitute a sufficient information for the purposes of procedure by *quo warranto*. So that for the purposes of the general demurrer now being considered, all of the information which undertakes to specify grounds of proceeding against the defendant could be

rejected as surplusage and still enough would remain to make a good information under the law. It seems to be well settled that an *ex officio* information need only be general in its character and no averments, further than general averments, are required. The information is not required to show the title of the relator; it is enough to allege in general terms that the incumbent of the office is in possession thereof without legal authority. *People v. Miles*, 2 Mich. 348; *People v. Abbott*, 16 Cal. 358; *People v. Ins. Co.*, 16 Johns. 358; *People v. Woodbury*, 14 Cal. 43; *People v. Richardson*, 4 Cow. 97. (4) The point that a judge of the court of appeals can be removed from office only by impeachment or address, and that his title to his office can be inquired into only by contest of election will hardly be seriously insisted on. The point, under the statute of March 31, 1893, is that the defendant never was elected. He is merely an usurper. Hence he is not to be impeached or removed by address, each of which methods assumes a lawful induction into office, but misconduct or disability while in the discharge of functions lawfully acquired. *State ex rel. v. Draper*, 47 Mo. 29; *State ex rel. v. Maguire*, 47 Mo. 35; *State ex rel. v. Miller*, 100 Mo. 446; *State v. Bennett*, 102 Mo. 362; *State ex rel. v. Equitable Loan Ass'n*, 41 S. W. Rep. 916.

*Edward C. Crow*, Attorney-General, and *Chester H. Krum* on motion for rehearing.

(1) The issue charged in the petition was as to whether or not Bland expended more than the $1,700, which by law he was allowed to expend. The allegation as to the amount that he did expend and the means by which it was expended and the persons with whom he expended the same are certainly allegations

that would directly touch upon the issue made by the pleading on this question, to wit, as to whether or not he expended an amount exceeding that fixed by statutory limitations. Therefore, this paragraph stating the expenditure of $1,000, was relevant. Then if the facts stated in this paragraph, to wit, the expenditure of $1,000, in the manner pleaded are relevant, material and well pleaded, the demurrer admits them because the pleader has not denied said facts and therefore, they are to be taken as true. We have then a complete charge of the expenditure of $1,000. Paragraph three of the petition charges that said Bland did promise one Rozelle that he, said Bland, would pay Rozelle the sum of $1,000 if said Bland's name was placed upon the People's Party ticket. The same proposition as to the materiality, relevancy and manner of pleading of the proposition involved in the first paragraph will apply with equal force to the fact pleaded in the third paragraph, to wit, the promise to pay $1,000 additional. We have then an admission by the demurrer of the promise to pay $1,000 and the promise of $1,000 making in the aggregate $2,000 or, in round numbers, $300 in excess of the amount allowed to be expended by section 6 of the law of 1893. This amount the court will observe is not $1,700 in any one item, but in the aggregate items that the candidate is allowed to expend in any manner whatever. We have then the fact that the demurrer admits that the candidate, Judge Bland, has expended and promised to expend more than he is allowed to spend by virtue of this law, and if this be the truth, then the petition certainly states the cause of action in section 6, because section 6 says: "Any payment, contribution, or expenditure, or promise, agreement or offer to pay, contribute or expend any money or valuable thing in excess of said $1,000 for the purpose of obtaining his

nomination or election, is hereby declared unlawful." See Session Acts of 1893, p. 160.

MARSHALL, J.—This is an original proceeding instituted in this court on the eighteenth of January, 1898, by the Attorney-General, on the application in writing of Roderick E. Rombauer, under the provisions of the act of the General Assembly of Missouri, entitled "An act to prevent corrupt practices in elections, to limit the expenses of candidates, to prescribe the duties of candidates and political committees, and provide penalties and remedies for violations of this act," approved March 31, 1893 (Acts 1893, p. 157). The petition is as follows:

"The State of Missouri by the information of Edward C. Crow, Attorney-General, gives the court to understand and be informed that at the general election held in the State of Missouri, under the laws of said State, on the 6th day of November, 1896, one Charles C. Bland and Roderick E. Rombauer were respectively candidates of the Democratic and Republican parties for judge of the St. Louis Court of Appeals; that at said election, according to the official count said Bland received 172,591 votes, constituting the majority of all the votes cast at said election for said office. That he was thereupon declared duly elected and was properly commissioned and qualified for the term of twelve years and assumed the duties of said office and still exercises the same. That said Roderick E. Rombauer at said election received 159,168 votes, according to the official count, which number was the next highest number cast for any person for said office at said election. Relator charges that defendant without any legal right or authority whatsoever has been, since the —— day of January, 1897, usurping, holding, using and exercising the office of judge of the St. Louis

Court of Appeals, an important public office in the State of Missouri, and still does usurp, hold, use and exercise the same within the State of Missouri, and since the day aforesaid has unlawfully claimed, received and enjoyed the rights, fees and emoluments belonging and appertaining to the said office. Relator charges that at the election held on the 6th day of November, 1896, and theretofore during the canvass and after the nomination of said Charles C. Bland, said Bland was guilty of divers violations of the act of the General Assembly of the State of Missouri approved March 31st, 1893, in this, to wit:

"*First:* That said Bland paid the sum of one thousand dollars to one Samuel B. Cook, with intent that the same was wholly or in part to be expended in securing the retirement from the canvass of one John W. North, the candidate for said office of a political party different from the one which nominated said Bland, and with intent that the money thus paid should be used to induce the said North and his political friends to cast their votes for him, the said Bland, for said office at said election, and that said votes were actually thus secured for said Bland, which would otherwise have been given to said North. *Second:* That at said election, to wit, after the various parties had nominated their candidates for judge of said St. Louis Court of Appeals, the said Bland promised to the said North, that if he, the said North, would retire from the said canvass in favor of him, the said Bland, that he, the said Bland, would use his influence to have him, the said North, appointed to the office of reporter of the St. Louis Court of Appeals, which office is a public office of great value, to wit, of the value of $2,000 per annum, requires skill and capacity and should be bestowed on the most worthy and competent person, regardless of other considerations. That thereupon

said North, induced by said promise, did retire from said canvass, whereby a great many votes were secured to said Bland which would otherwise have been given to said North. *Third.* That said Bland at said election, to wit, after the various parties had nominated their candidates for the office of judge of the St. Louis Court of Appeals, did promise one Arthur B. Rozelle, who was then and there the chairman of the state central committee of the People's party, that if he the said Rozelle would secure the withdrawal of the said John W. North's name from the ticket of the said People's party, and cause the substitution of the said Charles C. Bland's name on said ticket, in place of the name of the said John W. North, that then he the said Bland, would pay to the said Rozelle, the sum of one thousand dollars, and that thereupon the said Rozelle with his confederates, did secure such withdrawal and substitution, whereby very many votes were secured for said Bland which would otherwise have been given for said North. *Fourth.* That the said Bland shortly preceding the said election did promise to and agree with one Henry W. Bond, or else had a tacit understanding with him, the said Bond, who was then and there a judge of said St. Louis Court of Appeals, that if he, the said Bond, would aid him in carrying out his said promise to said North, that he, the said Bond, should have the controlling voice in the selection of other officers, which might be appointed by said St. Louis Court of Appeals, and that by such inducement he, the said Bland, secured the promise of said Bond to vote for the election of said North for reporter and secured the withdrawal of said North from the canvass and the substitution of his own name in place of that of said North, whereby very many votes were secured for said Bland, which would otherwise have been given for said North. *Fifth.* That the said Bland was guilty of the violation

of the seventh section of said act by not filing with the Secretary of State and with the recorder of deeds of the county wherein the said Bland resided, and within the time required by said act such a sworn statement of his expenditures and promises as said act requires, to wit: A statement setting forth in detail all sums of money (except all moneys paid for actual traveling expenses, including hotel or lodging bills) contributed, disbursed, expended or promised by him, and to the best of his knowledge and belief, by any other person or persons in his behalf, wholly or in part in endeavoring to secure or in any way in connection with his nomination or election, or in connection with the election of any other persons at said election, and showing the dates when, and the persons to whom and the purpose for which all such moneys were paid, expended or promised. *Sixth.* That at said election the amount expended, contributed and incurred by said Bland for the purpose of securing his own nomination and election and the amount expended by other person or persons, wholly or in part with his knowledge for said purpose exceeded in the aggregate the sum of seventeen hundred and thirty-two dollars and sixty-two cents, which was the amount authorized to be expended by any one candidate for judge of the said St. Louis Court of Appeals, in furtherance of his nomination and election, by the provisions of the act hereinbefore recited.

"Relator further avers that heretofore, to wit, on the 13th day of January, A. D., 1898, the above named Roderick E. Rombauer filed with relator herein, as Attorney-General of the State of Missouri, complaint in writing, as required by section 10 of the act approved March 31st, 1893, relating to elections and corrupt practices therein, a copy of which said complaint is hereto attached and marked 'Exhibit A.'; that on the said 13th day of January, A. D., 1898, said Roderick E.

Rombauer filed with relator, as Attorney-General of the State of Missouri, a bond to the State of Missouri in a penalty of $1,000, subscribed by two or more sureties, justifying as freeholders of the State in double the amount of the penalty of such bond, exclusive of all liabilities and property exempt by law from levy and sale under execution, conditioned for the payment to the State of all the costs and disbursements for which it might become liable for or on account of such action, a copy of which said bond is hereto attached and marked 'Exhibit B.'

"Wherefore relator prays for judgment that the said defendant has usurped and unlawfully held, used and exercised said office of judge of the St. Louis Court of Appeals and that he be ousted therefrom and that the said Roderick E. Rombauer be adjudged entitled to the said office and that he be allowed to assume the execution of the duties of the same on taking the oath and qualifying as prescribed by law."

The respondent interposed a demurrer, general and special, containing nine grounds, but in the view we take of the case it is only necessary to refer to the general ground, "that said information does not state facts sufficient to constitute a cause of action in this, to wit: The several charges contained in the information do not, nor any of them, constitute a ground under the provisions of the act of the General Assembly of the State of Missouri, approved March 31st, 1893, upon which this proceeding was instituted, for ousting respondent from office."

The case was submitted on the fifteenth of March, 1898, upon the demurrer to the petition, after full oral argument, and upon elaborate and exhaustive briefs of counsel, whose diligence and research have greatly aided the court. The case is one of first impression in this State under the "Corrupt Practices Act."

It is patent that the proceeding is predicated upon sections 10 and 6 of the act, which are as follows: ´

"Sec. 10. At any time during the term of office of any public officer elected under the laws of this State, or under the charter of any city therein, the person who received the next highest number of votes for such office at the election at which such public officer was elected, as shown by the official count, may present an application in writing, verified by his affidavit, to the Attorney-General, setting forth one or more of the following charges against such public officer, to wit: That at the election at which such public officer was elected, the total amount expended, contributed or incurred by such officer exceeded the sum allowed by section six of this act for such candidate, or that votes were secured by him or his agent or agents, or with his consent or connivance, or with the consent or connivance of his agent, or agents, by some committee or organization, or some political party, of which party such public officer was a nominee, or by which he was supported, or the agent or agents of some such committee or organization, by paying, contributing, offering or promising to contribute money or other valuable thing as a compensation or reward, or by some promise or influence, the giving such vote or votes, or that votes were withheld from such applicant by reason of such practices by or on behalf of such officer, agent, committee or organization, or by reason of some act on behalf of such officer declared by this act to be unlawful; and further setting forth that the applicant desires said Attorney-General to bring an action to have such public office declared vacant on account of said violation of the laws concerning elections. Such application shall be accompanied by a bond to the State of Missouri in the penalty of one thousand dollars, subscribed by two sureties, who shall justify as freeholders of the State,

and in double the amount of such penalty, exclusive of all their debts and liabilities and property exempt by law from levy and sale under execution—such bond to be conditioned for the payment to the State of all the taxable costs and disbursements for which it may become liable for or on account of such action.

"Sec. 6. No candidate for Congress or for any public office in this State, or in any county, district or municipality thereof, which office is to be filled by popular election, shall, by himself or by or through any agent or agents, committee or organization, or any person or persons whatsoever, in the aggregate pay out or expend, or promise or agree or offer to pay, contribute or expend any money or other valuable thing in order to secure or aid in securing his nomination or election or the nomination or election of any other person or persons, or both such nomination and election, to any office to be voted for at the same election, or in aid of any party or measure, in excess of a sum to be determined upon the following basis, namely: For five thousand voters or less, one hundred dollars; for each one hundred voters over five thousand and under twenty-five thousand, two dollars; for each one hundred voters over twenty-five thousand and under fifty thousand, one dollar; and for each one hundred voters over fifty thousand, fifty cents—the number of voters to be ascertained by the total number of votes cast for all the candidates for such office at the last preceding regular election held to fill the same; and any payment, contribution or expenditure, or promise, agreement or offer to pay, contribute or expend any money or valuable thing in excess of said sum, for such objects or purposes, is hereby declared unlawful."

It thus appears that section 10 authorizes a proceeding of this character against any officer upon any one or more of the following charges:

1.   That he expended, contributed or incurred at the election a greater amount of money than the limit fixed by section 6.

2.   That votes were secured by him or his agents with his or their consent or connivance, by some committee or political party of which he was the nominee or by which he was supported or by the agents of such committee or political party, "by paying, contributing, offering or promising to contribute money or other valuable thing as a compensation or reward, or by some promise or influence, the giving such vote or votes, or that votes were withheld from such applicant" (the defeated candidate who received the next highest vote) "by reason of such practices by or on behalf of such officer, agent, committee or organization, or by reason of some act on behalf of such officer declared by this act to be unlawful."

Reduced to a minimum of verbiage the act provides, *first*, that if a public officer exceeds the limit of money he is authorized to expend, or *second*, that if he or his agent or committee or. political party procures votes for him by bribery of voters, he shall be ousted from office, and the defeated candidate, who received the next highest number of votes, shall be installed in the office.   The purpose of this proceeding is to oust defendant and to install Roderick E. Rombauer, the applicant, in the office of judge of the St. Louis Court of Appeals.

The petition contains six charges against defendant, but it is admitted by informant and applicant that the fifth charge states no cause for ouster under the act, and the demurrer is therefore confessed as to that charge.

Of the remaining charges, the first, second, third and fourth attempt to charge bribery, and the sixth that the limit of expenditure was exceeded.   The

demurrer challenges the sufficiency of these charges, and the question for our decision is whether the acts charged against defendant bring the case within the provisions of the Corrupt Practices Act.

The first charge is that defendant paid Cook $1,000 with intent that it should be used wholly or in part to secure the retirement from the canvass of North, the candidate of another political party for said office, "and with intent that the money thus paid should be used to induce the said North and his political friends to cast their votes for him, the said Bland, and that said votes were actually thus secured for said Bland, which would otherwise have been given to said North."

The second charge is that Bland promised North that if he would withdraw in his favor, he, Bland, would use his influence to have him, North, appointed reporter of the St. Louis Court of Appeals.

The third charge is that Bland promised Rozelle, the chairman of the State central committee of the People's party, that if he, Rozelle, would secure North's withdrawal and his, Bland's, substitution, as the nominee of the People's party, he, Bland, would pay him, Rozelle, $1,000, and that Rozelle accomplished this, "whereby very many votes were secured for said Bland which would otherwise have been given for said North."

The fourth charge is that Bland agreed with Judge Bond of the St. Louis Court of Appeals, "*or else had a tacit understanding with him,*" that if Bond would aid him, Bland, in carrying out his, Bland's, promise to North to make him reporter of the St. Louis Court of Appeals, Bond might appoint the other officers of that court, in consequence of which Bond's vote was secured, North withdrew from the canvass, Bland became the nominee of the People's party, and many

votes were secured for Bland which would otherwise have been given for North.

The sixth charge is that the amount expended, contributed and incurred by Bland to secure his nomination and election, "and the amount expended by other person, or persons, *wholly or in part* with his knowledge for said purpose," exceeded the legal limit.

Considered in the abstract or in the concrete, the first, second, third and fourth charges do not bring this case within any of the provisions of the act of 1893. The acts prohibits *bribery of voters.* The charges allege the payment of money or promise of appointment to office to secure the withdrawal of North and the substitution of Bland as the nominee of the People's party. It is not charged that the money was paid or the appointment promised to secure the vote of even North himself for Bland, nor that North actually voted for Bland. It is averred that in consequence of the substitution of Bland for North as the nominee of the People's party, votes were secured for Bland which would otherwise have been given to North. This is necessarily true, but a like result always follows whenever the same person is nominated by more than one political party. We take judicial notice of such events as constitute a part of the political history of our country and State (*Holmes v. Kring,* 93 Mo. *loc. cit.* 456; 1 Greenl. on Ev. [15 Ed.], sec. 6), and are therefore aware of the historical fact that in 1872 Horace Greely was the nominee of the Democrats and Liberal-Republicans for President of the United States, while U. S. Grant was the Republican nominee, and Charles O'Connor was the Democratic nominee; and later, in 1884, in our State, that Nicholas Ford was the nominee of the Fusion party, which was made up of the Republican party and of other minor political organizations. We also know that in 1896

the same persons were nominated and voted for as Presidential Electors for the fourth, eighth and fourteenth congressional districts, by the Democratic and Populist parties. It is, therefore, not unusual or unprecedented that the same person may be the nominee of more than one political party at the same time. In fact it is customary for minority parties to coalesce, when they can, for in no other way could they hope to cope successfully with the majority or plurality party.

The act of 1893 does not prohibit such fusions. The charges allege a fusion between the Democrats and Populists, whereby Bland became the nominee of both parties and as such received the votes of both. The fact that North withdrew in consequence of any influence does not taint the transaction with bribery, for it is not charged that the money or influence was paid or promised to secure North's vote, nor that any such inhibited means were employed by Bland or any one for him to secure the votes of any voter. The charge is single, that in consequence of Bland's substitution for North as the regular nominee of the People's party, Bland received votes which would have otherwise been cast for North. This may be accepted as almost a truism, but it is neither illegal nor unreasonable. The payment of money to Cook to secure the withdrawal of North, the payment of money to Rozelle to procure the substitution of Bland for North as the nominee of the People's party, the promise of Bland to North to use his influence to have North appointed reporter of the St. Louis Court of Appeals if he would withdraw from the People's ticket, and the promise by Bland to Bond to let him have the appointment of the other officers of the Court of Appeals if he would aid Bland in carrying out his promise to North constitute the gravamen and essence of the complaint against Bland, and although stated

in four separate charges, are in reality only the separate means alleged to have been employed to accomplish the single end of creating a fusion between the Democratic and People's party so far as the office of judge of the St. Louis Court of Appeals was concerned. Yet none of these acts come within the prohibitions of the act of 1893—they do not constitute bribery of voters. In this connection it is profitable to analyze the charges. The first charge alleges a payment of $1,000 to Cook to be used wholly or in part to secure North's withdrawal and with the intent that the money should be used to induce North and his friends to vote for Bland and that votes were actually thus secured for Bland which would otherwise have been given to North. Yet there is no allegation that Cook ever paid any of the money to North or to any of his friends to secure their votes. On the contrary it is alleged that it was the withdrawal of North which secured the votes for Bland. So this charge states no bribery of voters. The second charge likewise alleges a promise to influence the appointment of North as reporter if he would withdraw. Here again there is no allegation of bribery of voters, nor even an averment that North himself voted for Bland. The third charge states a promise to pay Rozelle $1,000 to secure Bland's substitution for North as the nominee of the People's party, and an accomplishment of that end, but no allegation of bribery of a voter, nor that Rozelle himself voted for Bland. The fourth charge alleges an agreement or "tacit understanding" between Bland and Bond concerning the appointment of the officers of the St. Louis Court of Appeals to enable Bland to carry out his promise to North. Still there is no averment of bribery of voters. Thus it appears that if the charges be taken as true they do not state the offense of bribery

of voters which is the prohibited act under the law of 1893.

This act is penal in its every nature and fibre.  It provides for punishment as for felonies and as for misdemeanors, and also for forfeiture of office even after the incumbent has received a majority of the votes cast at the election and been inducted into office. The act should therefore be strictly construed, and nothing should be regarded as included in it which is not clearly and intelligently described in its very words. *Rozelle v. Harmon*, 103 Mo. 339; *Connell v. Western Union Tel. Co.*, 108 Mo. 459; *State ex rel. v. Smith*, 114 Mo. 180; *Dudley v. Western Union Tel. Co.*, 54 Mo. App. 391.

The history of the legislation against corrupt practices in elections confirms and emphasizes the view we have taken that fusions between political parties, or such acts as are charged in this case, are not within the scope of the act of 1893.  This act was manifestly patterned after the English Corrupt Practices Acts of 1854 (17 and 18 Victoria, Pub. Gen. Stats. 1854, p. 522) and 1883 (46 and 47 Victoria, Law Reports Statutes, vol. 19, p. 242).  In the English statute of 1854, there was no prohibition against inducing the withdrawal of a candidate at an election by any means that might be employed to accomplish the purpose.  It was not until 1883 that procuring the withdrawal of a candidate was prohibited.  Then for the first time the ban of the law was laid upon such practices.  The fifteenth section of the English act of 1883 is as follows: "Any person who corruptly induces or procures any other person to withdraw from being a candidate at an election, in consideration of any payment or promise of payment, shall be guilty of illegal payment, and any person withdrawing, in pursuance of such inducement or procurement, shall also be guilty of illegal payment."

Prior to the adoption of this regulation the English law had for years contained provisions, in almost the same words as our act of 1893, against bribery of voters, and the expenditure of more money than the limit fixed by the act, besides various other provisions not included in our act, but until 1883 it had not been deemed necessary or expedient to prohibit one candidate from securing the withdrawal of an opposing candidate. We have adopted the old English law, but have not yet enacted any law similar to the section quoted of the English law of 1883, and until the legislature sees fit to enact such a law, we can not, by construction, enlarge the provisions of the act of 1893, so as to add to the acts now prohibited other acts, such as those charged in this case. Laws of this character have always been strictly construed. Thus, in *Com. v. Wells*, 110 Pa. St. 463, an act prohibiting betting at an *election* was held not to apply to betting upon the result of a primary election held to *nominate* candidates for a political party. The case of *Mason v. State*, lately decided by the Supreme Court of Ohio, 50 N. E. Rep. 6, did not involve the questions now under consideration. That was a plain case of bribery of voters, and consequently has no application to this case.

The sixth charge alleges that the amount expended by Bland to secure his nomination and election, "and the amount expended by other person or persons, *wholly or in part* with his knowledge for said purpose," exceeded the legal limit.

It will be observed that it is not charged that Bland himself or any other person for him with his knowledge or consent spent more money than the law permits. The allegation is that what he spent and what his friends spent, partly *with* his knowledge and partly *without* his knowledge, exceeded the legal limit.

It needs no deep discernment to see that if the expenditure of money for a candidate without his knowledge or consent would work a forfeiture of his office, an officer might be ousted for acts done by others beyond his control and without his knowledge. Under such a construction of the statute no man, however honest or law-abiding, would ever have a safe tenure of office, for if he can be ousted because of the acts of others done without his knowledge, then in order to accomplish this purpose it would only be necessary for some evil-minded or designing person to spend enough money added to the amount the officer had legitimately spent, to exceed the limit, and the innocent officer would lose the office to which the people had elected him. This is a *reductio ad absurdum*, but it points extremities to which we would be led if the sixth charge was held good. No man was ever punished or deprived of an office for an act he did not commit himself or which was done without his knowledge or consent, where the integrity of the voter's will was not violated or the legality of the election itself was not questioned. It is too plain for argument therefore that the sixth charge states no cause of action against the defendant.

It is insisted however, that this is a proceeding by *quo warranto*, instituted by the Attorney-General, *ex officio*, under his constitutional right, that the petition in this case is good even if all the charges be disregarded, because it alleges that defendant is usurping a public office, and that the burden of showing a right to the office in question is devolved upon the defendant. The error in this contention consists in assuming that this is a proceeding by *quo warranto*, instituted by the Attorney-General *ex officio*. Proceedings by *quo warranto* may be instituted by the Attorney-General in his official capacity and of his own motion. *State v. Merry*, 3 Mo. 278; *State ex rel. v. Rose*, 84 Mo. 198;

*State ex rel. v. Frazier*, 98 Mo. 426; *State ex rel. v. Mc-Millan*, 108 Mo. 153; *State ex rel. v. Sedalia, Etc., Assn.*, 142 Mo. 325; *State ex inf. v. Berkeley*, 140 Mo. 184; *State ex rel. v. Vallins*, 140 Mo. 523. And it is not necessary or proper that there should be a private relator in such a proceeding. But under the act of 1893, the Attorney-General has no right or power, *ex officio*, to institute a proceeding of this character. On the contrary, he can not institute the proceeding until the defeated candidate takes the initiative by making an application to him, and giving a bond, and the applicant has the express *right* under the act to be a party to the proceeding, and if the defendant is ousted, the applicant may obtain a judgment awarding the office to him. In no proper sense therefore can this be regarded as a proceeding by *quo warranto* instituted by the Attorney-General at his own instance, or *ex officio*, but it is purely a special proceeding instituted under the act of 1893, and therefore falls within all the limitations and restrictions by the statute provided. The fact that section 11 of the act provides that the action shall be deemed to be and shall be conducted according to the rules prescribed by law for an action against the usurper of an office, does not change the action from a proceeding under the statute to a common law proceeding by *quo warranto*. For whilst we find these provisions in section 11, we also find that by section 10 the defeated candidate is required to make an application in writing, verified by his affidavit, to the Attorney-General, setting forth one or more of the charges specified in that section and asking the Attorney-General "to bring an action to have such public office declared vacant on account of said violation of the laws concerning elections." That is, the *applicant* is required to specify the *charge* and the Attorney-General *must* (he has no discretion) bring the action to

have the office declared vacant "on account of *said* violation of the laws concerning elections." The Attorney-General is, therefore, limited to the charges specified by the applicant, and the office can only be declared vacant on account of "said violation." (The petition in this case complies with the statutory requirement by averring the filing of the verified charges and bond, and even makes them exhibits in the case.) Manifestly therefore the petition in the case must set out the charges preferred by the applicant, so that the defendant may be advised of the nature of the charges against him, and so that he may demur to them or join issue upon them. The proceeding being highly penal in its character, the petition must state clearly charges which are made actionable by the act. In this and, in fact, in all cases, the petition must state a cause of action, and it is the privilege of a defendant to challenge the sufficiency of the petition by raising the questions of law, which are apparent upon the face of the petition, by a demurrer, or he may join issue as to the facts. But whether the defendant demurs or answers he can always, at any time, during the progress of the case, insist that the petition states no cause of action in law against him, for the petition is always a part of the record, and errors apparent upon the face of the record are always open to proper attack. Courts are instituted for the enforcement of the laws, and as no litigant can confer jurisdiction over the subject-matter upon a court, even by consent, it is wholly immaterial whether the parties raise the question of jurisdiction by answer or demurrer or refuse to raise it at all. If the petition fails to charge any offense against the laws of the State, it is the province, privilege and duty of the court to refuse to enter a judgment against the defendant. It is a solecism to say a court of law would enter a judgment

punishing a defendant for doing an act that was never made unlawful by any law. *Kansas City v. Corrigan*, 86 Mo. *loc. cit.* 69. In this case the defendant demurred to the petition instead of filing an answer. This was proper practice and was conducive to a speedy determination of the question of whether the charges constitute any offense under the Corrupt Practices Acts of 1893, but as above observed it would have been the duty of the court to decide that question before it could render a judgment, whether the defendant raised the question in one way or another or not at all, for courts are not mere playthings for litigants, but are created for the discharge of serious and solemn duties.

In reaching the conclusion announced in this case, we feel the importance of the questions involved. We realize that pure, fair and honest elections, untainted by fraud and unstained by even a suspicion of wrong-doing, are the foundations upon which our institutions rest. We appreciate the especial necessity of rigidly enforcing all constitutional laws having for their object the protection of the sacred right of the electors to have their wishes faithfully recorded and strictly respected. We understand that the purpose of acts like that of 1893 is to purify elections, by guaranteeing assurance and protection to the law-abiding citizens, and by punishing with symbolic stripe, shaven head, rough fare and hard labor, all who are so bereft of patriotism, or so impregnated with criminal selfishness, as to pollute the fountain from which springs the liberties of the people. But under the division of powers in our form of government we have no right to trench upon the prerogatives of the other co-ordinate branches of our government. We have no right to make laws. Our duty and province is ended when we construe and enforce the laws that are made by the

legislature, and by as much as we should overstep the boundary lines of our powers and attempt to invade the province of the legislature, we would be ourselves violators of the Constitution and laws we are solemnly sworn to obey.   These truisms in our law are not threadbare utterances.   It is as wholesome to recall them to-day as it ever was in our history.  They are the alphabet of the language of freedom, and the *ultima thule* of the liberties of our people.

Our conclusion is that the charges contained in the petition do not constitute any offense against any law of our State, and do not bring this case within any of the provisions of the Corrupt Practices Act of 1893, and that the petition be adjudged insufficient in law, and judgment entered for the defendant. · It is so ordered.   GANTT, C. J., and SHERWOOD, BURGESS and WILLIAMS, JJ., concur;   BRACE and ROBINSON, JJ., dissent.

BRACE, J. (*dissenting*).—I can not concur in the foregoing opinion of Judge Marshall for the reason that in my judgment an offense under the provisions of the Corrupt Practices Act of 1893 is sufficiently charged in the first, second and third specifications of the petition; hence the demurrer should be overruled.   ROBINSON, J., concurs in my view.