DANIEL R. KLINGER

v.

THE PEOPLE ex rel. Elijah Conkle et al.

130 509
31a 514

130 509
f193 ²434
d193 ⁵437

Filed at Springfield October 31, 1889.

1. DRAINAGE LAW—the different systems—"combined drainage," and "individual drainage"—of their respective qualities. There is a distinction between the "system of combined drainage" and that of "individual drainage." Under the latter, an individual may drain his own land, if necessary, through the lands of others, whether the latter are benefited or not, by making compensation therefor as the law provides. This system requires no district organization.

2. Where there are lands so related that the same system will benefit all of them, more or less, and it is proposed to construct the system at the expense of all the owners, in proportion to the benefits to their respective lands received, they may proceed to accomplish it without resort to condemnation, in the mode prescribed; and this is the system of combined drainage.

3. The combination referred to is not of ditches, though that will generally be required, but of contribution to the expense of constructing, extending, improving and maintaining them; hence, organization is necessary, since a number of persons have a common, though not necessarily an equal, interest. All who are so concerned have a right to be heard, and may favor or oppose the proposition.

4. SAME—formation of district—what lands a district may include. If the requisite proportion, in number and interest, of the owners of lands petition for it, a district may be formed, which is by the law intended to embrace the lands to be benefited, and none other. The lands are required to be classified according to the relative benefit they receive, and assessments are made upon them in that proportion for the necessary means to carry on and complete the work.

5. A drainage district was attempted to be organized, embracing all the lands of a township, and the commissioners divided the same into four areas of land or districts, one of which embraced sixty-four sections of land, and included an incorporated village having independent powers of its own in respect to drainage, and much land requiring no drainage. The ditch for one shed was about five miles long, and did not and could not, by any connection or combination, be made to aid in draining an acre of either of the other areas or districts: Held, that the districts so attempted to be formed were not such, as is contemplated by the law, the owners of land in any one of the sheds not being taxable for the ditches or drains in either of the others.

6. All the lands in the township could not be embraced in one district, because so small a portion of them would be benefited by the same work or system of works; and as the affairs of such a district could not be administered according to the provisions of the act of 1879 or that of 1885, the formation of such a district would not be validated by the later act.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Piatt county; the Hon. JAMES F. HUGHES, Judge, presiding.

Mr. A. T. PIPHER, and Mr. S. R. REED, for the appellant.

Mr. CHARLES HUGHES, State's Attorney, and Mr. WILLIAM E. LODGE, for the appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

When this case was decided by the Appellate Court of the Third District, the following opinion was delivered by Mr. Justice Pleasants of that court:

"This was an information in the nature of a *quo warranto*, filed by the State's attorney of Piatt county, against Klinger, Vandervort and Wooding, charging, in separate counts, that respondents usurped the office of drainage commissioners of the town of Blue Ridge; of drainage commissioners of drainage district No. 1, of said town; and of drainage commissioners of, in and for certain pretended drainage districts or systems of drainage, which they have designated as drainage system No. 1, No. 2, No. 3 and No. 4, respectively, and without right or authority have proceeded to lay out, survey, plat and construct ditches therein, and to levy taxes, assessments, etc., therefor.

"Respondents filed a plea averring that Blue Ridge was a town in Piatt county; that said county has for years been under township organization; that in 1883 there was presented to the town clerk of said town, with the requisite bond, a petition, signed by a majority of adult owners of all the lands in said town, being also owners, in the aggregate, of more than

one-third of all said lands, praying that a drainage district be organized, embracing all the lands in said town, for the purpose in that behalf in the statute mentioned; that due notice thereof was given to the then commissioners of highways of said town; that they proceeded regularly under the provisions of the Drainage act, approved May 29, 1879, to organize, and did so organize, the district prayed for, as drainage district No. 1, in said town; that no other drainage district has been organized in said town, and that respondents are now the commissioners of highways of said town. The pleas set out at great length the several steps and proceedings taken by all concerned in the alleged organization, and the several provisions of the act above referred to, and of that approved June 27, 1885, by which, as they claim, the same were respectively directed or authorized.

"A demurrer to the plea, assigning divers causes therefor, was sustained. Respondents Vandervort and Wooding then filed a disclaimer, and declined to defend further, and Klinger abiding by the plea, a judgment was entered of *ouster* and for costs against Klinger and Vandervort, Wooding having only just succeeded Wheeler (a former co-respondent) as commissioner of highways, and been substituted for him as respondent herein. From that judgment Klinger appealed, and brings the record here for review.

"On the part of the People it is contended that the plea shows the district therein referred to, never had a legal organization; and further, that if it had, the respondents abandoned it, and have undertaken, of their own motion, without any petition, to create four distinct districts, under the name of 'Systems of Drainage.'

"The plea states, that upon the organization of said district, the commissioners, in the discharge of their duties, went upon and examined all the lands within it, to determine upon a plan of drainage therein, and upon such examination, being aided therein by a competent engineer, found the surface of the land

in said district, embracing the whole town, was such as to constitute four distinct water sheds, having different directions for the natural flow of the surface waters thereof, respectively; that the highest land was near the center of said district, east and west, but considerably south of the center, north and south, and extended thence northward, from which divide the natural flow of such water was about as follows: From the east and south-east parts of said district to the south or east of south, into Madden Run; from the north-east part to the north-east through a natural depression leading into the Sangamon river; and on the west side of the divide from the northern part to the south-west, by way of Trinkle slough, into Salt creek, and from the central and southern parts also, to the south-west, into Goose creek; that to provide a complete system of drainage for the district it would be necessary to construct main ditches for outlets, commencing at the divide near the center of the township, and leading, respectively, into Madden Run, Sangamon river, Goose creek and Salt creek; that no one continuous line of ditch could be constructed so as to provide efficient means of drainage for the lands embraced in the district, as organized; that the commissioners determined upon a plan of work for chief or main outlets for the water of the district which flowed by way of Goose creek and Trinkle slough, and found it would require four main ditches as outlets to four separate areas of low and wet land, having divides or swells of higher land between them,—two of said areas flowing their water into Goose creek, but discharging at different points, and the other two into Trinkle slough, but also at different points.

"From these statements in the plea we understand it to be conceded, as it clearly is in the argument, that it is not practicable to connect or combine a system of ditches that would drain the land of the district, as organized, or any two of the four water sheds first above mentioned. Each of these will require a system of drainage entirely separate from and independent of those of all the others.

"The question, then, is, whether the statute authorized the organization into one drainage district of lands so related, or, rather, so unrelated, with respect to drainage. We are of the opinion it did not. We understand that the 'system of combined drainage' is distinguished by the statute from the system of 'individual drainage,' which is therein recognized, though not specifically so named. An individual proposing to drain his own lands at his own expense, may do so, if necessary, through the lands of others, whether the latter are thereby benefited or not, making just compensation therefor, as the law provides. The drain or drains constructed for that purpose will constitute a system no less than in the case of combined drainage, but it will require no district organization. But where there are lands so related that the same system will benefit all of them, more or less, and it is proposed to construct it at the expense of all the owners, in proportion to the benefits to their respective lands received, they may proceed to accomplish it without resort to condemnation, in the mode prescribed. That is the system of combined drainage. The combination referred to is not of ditches, though that will generally be required, but of contribution to the expense of constructing, extending, improving and maintaining them. Here organization is necessary, since numbers of persons have a common, though not necessarily an equal, interest. All who are so concerned have a right to be heard, and may favor or oppose the proposition, as each sees fit. If the requisite proportion, in number and interest, of the owners of such lands petition for it, a district is formed, which is by the law intended to embrace the lands to be benefited, and no other. Commissioners are provided to plan and execute. The lands are classified according to the relative benefit they receive, and assessments are made upon them in that proportion for the necessary means, and so the work is done and maintained.

"Without referring specifically to the provisions of the statute, or stating more minutely its practical operation, it must

be obvious, from this general view of the scheme, that for a good many reasons the district No. 1, in this case so-called, can not be such as is authorized or contemplated by it. As attempted to be organized, it is uncommonly large of its class, embracing about sixty-four sections of land, and including an incorporated village having, by law, independent powers of its own in respect to drainage, besides ,much that needs no drainage and will not be drained. The ditch proposed for the north-eastern water shed will be about five miles in length. It will not, of itself, nor can it by any connection or combination, be made to aid in draining an acre of either of the others. On principle, the owners of lands in the south-western water shed should have nothing to say about nor should their lands be taxed for it. So of those owning lands in each of those four water sheds as to all the others. We think the statute conforms to this principle, and therefore that the plea shows no proper or sufficient petition for a district comprising the whole four or either of the areas affected by the separate systems, respectively ; that all the lands in the town can not be embraced in one district, because so small a portion of them would be benefited by the same work or system of works ; that the affairs of such a district could not be administered according to the provisions of the act of 1879 or of that of 1885, and hence the proceedings taken for its organization can not have been validated by the later act."

Concurring in the reasoning of the foregoing opinion and in the conclusion reached therein, we adopt the same as the opinion of this Court. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.**

---

*DANIEL R. KLINGER, Impl., *v.* THE PEOPLE, ETC.

MAGRUDER, J.: All the questions involved in the present case are discussed and decided in the foregoing case of *Klinger, Impl. etc.* v. *The People, etc.* The rulings in that case must govern in this case. The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*