THE PEOPLE ex rel. Sarah Harrison et al.

v.

COMMISSIONERS OF MINERAL MARSH DRAINAGE DIST.

*Opinion filed December 18, 1901.*

1. QUO WARRANTO—*filing of an answer to information in quo warranto not authorized by law.* The filing of an answer to an information in the nature of *quo warranto* is not required or authorized by law, but is not ground for reversal, since the answer has no more legal effect than an oral statement of the grounds of defense, and would therefore not be harmful to the petitioner.

2. SAME—*court is vested with large discretion in quo warranto.* The court is vested with large discretion in proceedings in the nature of *quo warranto*, and may grant the writ on the mere showing of the petition without a rule *nisi*, or he may order the defendants to show cause and hear both sides by affidavit, and may refuse the writ if the affidavits of the defendants so warrant.

3. SAME—*inclusion of certain lands in drainage district cannot be questioned in quo warranto in absence of fraud.* If the final order of the county court organizing a special drainage district finds that a combined system of drainage is necessary for the lands embraced in the district, the inclusion of certain lands in the district cannot be questioned in *quo warranto* proceedings unless it is alleged the judgment was procured by fraud. (*Klinger* v. *People*, 130 Ill. 509, distinguished.)

4. COSTS—*on denying leave to file information in quo warranto costs may be adjudged against relators.* On denying leave to file an information in the nature of *quo warranto* challenging the defendants' exercise of authority over certain lands in a drainage district, it is proper to enter judgment against the relators for costs.

APPEAL from the Circuit Court of Bureau county; the Hon. H. M. TRIMBLE, Judge, presiding.

This is an appeal from the circuit court of Bureau county from an order entered by that court denying leave to the appellants to file an information in *quo warranto* against appellees touching the exercise of authority over certain lands comprising a part of the Mineral Marsh special drainage district, in Bureau and Henry counties.

The district, comprising nearly ten thousand acres, was finally organized September 11, 1899, by proceedings

had in the county court of Bureau county, and including lands from four townships,—Mineral and Gold, in Bureau county, and Annawan and Alba, in Henry county.   On September 17, 1900, after the district had been fully organized and commissioners duly elected, the plans for the work determined upon and the assessments made. the State's attorney of Bureau county made a motion and filed a petition, duly verified, for leave to file an information in the nature of *quo warranto* against the commissioners of said drainage district, on the relation of Sarah Harrison *et al.*, in which petition it is alleged that running easterly and westerly through the district was a certain ridge, which naturally divided the drainage of said district so that the lands north of it drained off in a northwesterly direction into St. Peter's marsh and the lands south of it drained south-westerly into the ditches of the proposed district, and that by reason of the ridge two water-sheds existed, having entirely distinct drainage, with distinct and separate outlets, and that about six sections of land that should drain into St. Peter's marsh were improperly taken into the district as organized, and that the organization of such a district was not authorized by law and was void.

On the filing of the petition a rule *nisi* was entered against the commissioners to show cause why the information should not be filed, the court directing that each side might support its contention by affidavits.   The petitioner was required to have his proof in by the 8th day of October, and the defendants should, on or before the 22d day of October, show cause, and the cause was set for hearing at the latter date.

On the filing of the petition defendants filed their answer thereto, not verified, admitting the organization of the district, and that they were commissioners and were proceeding with the work and business of the district, and denying all the other allegations of the petition, and particularly denying the lands comprised in the dis-

trict constituted two water-sheds, but alleged that all the lands in the district were low, swamp lands, subject to overflow; that they were without drainage; that their contour and relation to each other were such that they required a system of combined drainage; that by the proposed plan of drainage a main drain and certain laterals and branches would properly drain all the lands into the proposed outlet in Mud river; denying that there is any marked or distinct division or ridge dividing one part of the lands from the other. Petitioner demurred to the answer for insufficiency, and the demurrer was overruled.

At the hearing about seventy affidavits were read and maps, plats and profiles put in evidence, and also the final order of the county court of Bureau county organizing the district. After the hearing of the evidence and the arguments of counsel the court discharged the rule and denied the writ, and the relators prosecute this appeal from that order, assigning as errors the overruling of the demurrer to the answer, entering the rule discharging defendants for cause, and denying the writ and adjudging costs against the relators.

Watts A. Johnson, State's Attorney, and S. W. Odell, for appellants.

George S. Skinner, and Jay L. Spaulding, for appellees.

Mr. Justice Ricks delivered the opinion of the court:

Upon the filing of the petition in this case the defendants filed an answer, not verified, which was very full, and, if the matters set up in it were true, constituted a complete defense to any information that might be filed, and was sufficient to advise the court that leave to file the information should not be granted. The petitioner demurred to this answer. The answer, among other things, alleged that at a former day, during the same

court, a petition for a similar writ, involving the same questions and by substantially the same relators, was presented and the prayer denied, and that the matter was *res judicata.* The demurrer was, that the special matter alleged in bar as *res judicata* was not sufficiently set forth and that the answer was otherwise insufficient in law. The court sustained the demurrer to that part of the answer relative to the former application for leave and overruled it as to the part which went to the insufficiency of the answer.

We know of no rule of practice in this class of cases requiring or authorizing an answer to be filed to such petition. The petition usually stands as a complaint, and where the rule *nisi* is ordered, allegations of the complaint constitute the issues, which may be supported or denied by affidavits on the respective sides. (*People* v. *McFall*, 124 Ill. 642; *People* v. *North Chicago Railway Co.* 88 id. 537; *People* v. *Waite*, 70 id. 25.) But we can see no ground for reversible error in the action of the court in this matter. The answer was unnecessary, and had no more legal effect than a simple oral statement of the grounds of the defense, and that could not have been harmful to the relators, as it advised them of the matters upon which the defendants were to rely. There were about forty affidavits on one side and about thirty on the other, and we have carefully read and considered all of them and are well satisfied that the great preponderence was in favor of the defendants.

It is insisted, however, that the court is not authorized to try the case in this manner and decide it upon the preponderance or greater weight of the evidence, but that if, taking the evidence all together, there is probable cause to believe the defendants guilty of the legal wrongs attributed to them, in such case the writ should issue. The statute is: "And if such court or judge shall be satisfied that there is probable ground for the proceeding, the court or judge may grant the petition and

order the information to be filed and process to issue."
(3 Starr & Cur. Stat. 1896, p. 3180.) By the statute and the
authorities the court is vested with a large discretion.
He may, if he elects, grant the writ on the mere showing
of the petition without a rule *nisi,* or he may order the
defendants to show cause, and, when he has pursued
the latter course, may hear both sides by affidavits; and
there is very high authority for the position that if the
affidavits for the defendants so positively deny the facts
asserted by the petitioners as to sustain an indictment
for perjury the information will be refused until an in-
dictment has been prosecuted and the persons perjured
convicted. (Angell & Ames on Corporations,—5th ed.—
sec. 749.) And we think, upon the affidavits alone, the
court was warranted, in this case, in refusing the leave
to file the information. In addition to the affidavits in-
troduced on the part of the defendants they introduced
the record of the final order of the county court of Bureau
county organizing this drainage district.

This was a special drainage district, and could only
be organized by proceedings had in the county court ac-
cording to the provisions of what is commonly known as
the Farm Drainage act, as found in 2 Starr & Cur. Stat.
1896, pp. 1557-1559, pars. 157-164. That statute requires
that "when the proposed district lies in three or more
towns in the same or different counties, * * * the peti-
tion * * * shall be presented to the county court of
that county in which the greater part of the lands" lie.
(Par. 157.) The next section provides for notice to the
land owners; requires that a copy of the petition shall
be published for three successive weeks in some weekly
newspaper, stating the day and term of court at which the
petition and all parties interested will be heard. Copies
of these notices are required to be mailed to each land
owner at least ten days before the time fixed for the
hearing, and copies are required to be posted in five pub-
lic places within the proposed district. (Par. 158.) The

preliminary hearing is then provided for, at which all persons interested may be heard. (Par. 159.) The preliminary hearing is chiefly for the purpose of ascertaining whether the court has jurisdiction of the persons of the parties in interest and whether the petition for the district complies with the requirements of the act. If the court finds in favor of the petitioners it enters an order to that effect and appoints three drainage commissioners for the district, who are required to go upon and examine the lands, and have power to employ a competent civil engineer and have surveys and estimates of the proposed work made, and return them, together with a map of the district, surveys and report of the civil engineer, all of which are to be filed with the clerk of such court on or before a time to which such court is adjourned, for a final hearing upon all matters touching the organization of the district. At said hearing any owner of lands in such proposed district may appear in person or by attorney, and persons under guardianship by their guardian or a guardian *ad litem,* "and be heard upon any and all questions, matters and things touching said report, and the organization of said district, and the court shall hear the testimony of all the witnesses then introduced." If the court, at this hearing, finds for the petitioners, and further finds that the benefits, for agricultural and sanitary purposes, to the lands included in the proposed district are equal to or greater than the costs of the proposed work, he is required to make an order organizing the district. (Par. 160.) The county clerk is then required to give notice for the election of three commissioners, and the manner of their election is provided for. (Pars. 161, 162.) These commissioners, so elected, are required to go upon the lands of the district "and determine upon a system of drainage, which shall provide main outlets of ample capacity for the waters of the district, having in view the future contingencies as well as the present." The petition authorized to be filed for the organization of a

193—28

drainage district must be such as is provided in section 11 of the original act, (which is paragraph 115, p. 1539, Starr & Cur. Stat. 1896,) and this petition is only authorized to be filed "when the case involves a system of combined drainage."

The final order organizing this district finds that the necessary and proper drainage of said lands "will require a combined system of drainage by the construction of one main ditch of about eight miles in length and one shorter main ditch of about one and one-half miles in length, both main ditches to be of about fifty feet average width and about eight feet average depth, and several lateral ditches, comprising in all about nine miles of such lateral ditches of smaller and variable dimensions." Thus it will be seen that the court expressly found that these lands required a system of combined drainage. In *Klinger* v. *People*, 130 Ill. 509, we defined the term "combined drainage" as being (p. 513): "Where there are lands so related that the same system will benefit all of them, more or less, and it is proposed to construct it at the expense of all the owners, in proportion to the benefits to their respective lands received, they may proceed to accomplish it without resort to condemnation, in the mode prescribed. That is the system of combined drainage. The combination referred to is not of ditches, though that will generally be required, but of contribution to the expense of constructing, extending, improving and maintaining them."

The petition for leave, now under consideration, contains no averment that the county court, at the time of the organization of this drainage district, did not have complete jurisdiction of the persons and the subject matter. It is not averred that proper notices were not given to the land owners, as required by the statute. In fact, the petition recognizes the organization of the district, and seeks now to question the action of the county court in including lands within its boundaries which, it

is alleged, lie north of the dividing ridge and the natural flow of which is alleged to be in a direction other than what it will be by the proposed plan of the commissioners. In fact, the chief complaint is that one of the main branches, called the "North branch," is about to be constructed across this ridge into the water-shed which they say leads off to St. Peter's marsh, and that the cost to them is going to be great and the ditch unnecessary. The county court is a court of record, and its orders, within its jurisdiction, are to be respected and sustained, and can only be attacked by *quo warranto* in this class of cases when its judgments and orders are alleged to have been procured by fraud. *People* v. *Cooper*, 139 Ill. 461; *Gauen* v. *Drainage District*, 131 id. 446; *People* v. *Drainage Comrs.* 31 Ill. App. 219.

*People* v. *Cooper, supra,* was a *quo warranto* proceeding questioning the legality of the enlargement of a special drainage district, prosecuted on the relation of land owners claiming that their lands did not drain into and were not benefited by and were not within the same system of drainage. In that case we said (p. 495): "Whether the lands sought to be annexed to a district are of the character and description here indicated is a judicial question, which the commissioners must, from the necessity of the case, determine, in the first instance, as preliminary to making the annexation, and we are inclined to the opinion that, at least in the absence of fraud, their decision, when made, is so far final as not to be the subject of inquiry and review in *quo warranto* proceedings."

*Gauen* v. *Drainage District, supra,* was a bill in chancery to foreclose the lien of a special drainage district for unpaid assessments. The contention was that lands had been taken into the district and assessed that derived no benefit, and therefore were improperly within the district. Mr. Justice BAILEY, in delivering the opinion of the court, said (p. 456): "In considering the provisions of the entire statute and amendment, of which the fore-

going is a sufficiently full resume, certain conclusions appear to us to be clear. One is, that the question as to what lands in a drainage district would in fact be benefited by the proposed drains and ditches was committed by the statute to the judgment and determination of the drainage commissioners, subject to review and correction by the county court, and that after that question was finally adjudicated by the decision of said court confirming the report of the commissioners, such decision, so long as it stood in full force and unreversed, was conclusive. * * * The order confirming the commissioners' report was by the statute made conclusive of the due organization of the district and of its boundaries, and it therefore became, unless reversed on appeal, equally conclusive of the fact that all lands included within the district would, in some material degree, be beneficially affected by the proposed work. The county court, during the pendency of the proceedings for the organization of the district, was made the proper and exclusive forum for litigating that question, and those who failed to appear and assert their rights, and those who asserted them unsuccessfully, were alike concluded by the decision of the court."

*People* v. *Drainage Comrs. supra,* was a *quo warranto* against a special drainage district. The information was filed. The plea set up the organization of the special district in the county court. The replication was, that certain signers of the petition were not land owners, as required by law, and that the lands in the district did not require a combined system of drainage. A demurrer was sustained to the replication and judgment was entered for the defendants. In speaking for the court, Mr. Justice WALL said (p. 222): "The filing of a proper petition gave the county court jurisdiction of the subject matter, and the posting, publishing and mailing of notices in the manner required by the statute gave the court jurisdiction of the persons of the owners of the lands.

Hence, whatever it was authorized to find upon the hearing must be binding upon all who might have interposed objections to the organization of the district.   *   *   *
The matters set up in the replications, as to whether the petition was signed by the proper number of land owners and whether the district required the system of drainage prayed for, were within the scope of inquiry confided by law to the county court."

It may be added that a reading of this petition, and the affidavits accompanying it, clearly discloses that this suit is not one in which the public have any interest, but was brought and prosecuted for the benefit of the relators and those objecting to proposed assessments and taxation for the construction of the north ditch. In such cases, and when such fact becomes apparent, the court is vested with a much greater discretion than where really public interests are involved.

Counsel for appellants insist that the case is "on all fours" with the case of *Klinger* v. *People*, 130 Ill. 509, and must be controlled by it. We think counsel in error, and we think they have not fully considered the *Klinger case.* In that case the information was filed charging usurpation of office. The commissioners attempted to justify by setting up the record of the drainage district, and, among other things there pleaded, showed that "the commissioners, in the discharge of their duties, went upon and examined all the lands within it to determine upon a plan of drainage therein, and upon such examination, being aided therein by a competent engineer, found the surface of the land in said district, embracing the whole town, was such as to constitute four distinct water-sheds, having different directions for the natural flow of the surface waters thereof, respectively," and that the respective outlets for the four water-sheds was south into Madden run for the east and south-east part of the district, into the Sangamon river for all the north-east part of the district, from the north-west part to the south-

west into Salt creek, and for the central and southern parts to the south-west into Goose creek, and that it would be necessary for the drainage of the district to commence at the divide, near the center of the township, and construct main ditches to those four outlets; that no one continuous line, or line and branches, of ditches could be constructed so as to provide efficient means of drainage for the lands embraced in the district as organized. To this plea a demurrer was interposed and sustained, and, we held, properly. From the record of the district it is disclosed that the lands were so situated that they could not be legally organized into a drainage district requiring combined drainage. Furthermore, that district was organized by the commissioners of highways of Blue Ridge township. The lands lay wholly within that town and included all the lands of this township. The action of the commissioners was not subjected to the review of any court, but the matter was referred by the statute to the highway commissioners, ás *ex officio* drainage commissioners, for their action. In favor of their action there were no intendments except those specified in the statute conferring the powers upon them, and the disclosure of their record in the plea was a condemnation of the whole proceeding.

It is next contended that the court erred in entering judgment for costs against the petitioner or the relators. There was no error in that. The statute provides that "whenever judgment is given for any defendant in such information, the person or corporation to whom judgment is given shall recover costs against the relator." (3 Starr & Cur. Stat. 1896, chap. 112, sec. 6, p. 3187.)

The judgment of the circuit court of Bureau county is affirmed.

*Judgment affirmed.*