THE BANK OF COMMERCE, Appellant, *vs.* SELDEN, WITHERS & Co., Respondents.

One of the consequences resulting from a commercial partnership is, that each partner has an implied authority to bind the firm in all matters within the general scope of the business in which the firm is engaged; but this implied power does not authorize a partner to bind the firm to any engagement unconnected with and foreign to the partnership; and although in such case the partner himself would be liable, the firm would not be bound without affirmative evidence of the consent of the other members.

Where it appears in proof, or by the instrument itself, that a partnership note was given for the private debt of one of the partners, or the partnership name was used for the accommodation of, or as surety of the partner, or a third person, and such fact is known to the creditor, or is implied from the nature of the transaction, at the time the note or other instrument is received by him, the burthen of proof is thrown on the creditor to show a previous authority or subsequent consent on the part of the other partners, before they can be charged.

This was an appeal from a judgment of the District Court of Ramsey County.

The verdict was in favor of the Respondents, (Defendants below,) and the Plaintiff's motion for a new trial was denied.

The errors alleged to have been committed upon the trial are stated in the opinion of the Court.

The following are the points and authorities relied upon by the Counsel for the Appellants:

*First.*—That the Plaintiffs established their *prima facie* case on showing the existence of the partnership and producing the check or bill of exchange in evidence, and producing the acceptance in the partnership name by one of the partners. *Greenleaf on Evidence, p.* 148 *et. seq.; McGregor, Denling & Curtis vs. O. F. & R. Cleveland,* 5 *Wend.* 475; *Vallet v. Parker,* 6 *Wend.* 615; *Smith v. Lasher,* 5 *Cow.* 688; *Whittaker v. Brown,* 16 *Wend.* 505; *Thorn v. Smith & Wright,* 21 *Wend.* 365; *Doty v. Bates,* 11 *Johns.* 544; *Story on Bills, Secs.* 13, 15, 168, 178; *Raborng v. Peyton,* 2 *Wheat.* 385; *Ridley vs. Taylor,* 13 *East.* 175; *Ensminger v. Marvin,* 5 *Black* 210; *Barrett vs. Swan,* 5 *Shep.* 180; *Leroy, Bayard & Co. v. Johnson,* 2 *Pet.,* 198.

*Second.*—That in this case the obligation of R. W. Latham as drawer was secondary and collateral to that of the Defendants, who as acceptors were the primary and original obligors. *See the above cited authorities and* 1 *Parsons on Contracts, p.* 158, 211; *Story on Bills, Secs.* 13, 15, *p.* 168, 178; *Wallace vs. McConnell,* 13 *Pet.* 136; *Van Cleve v. Thompson,* 3 *Pick.* 12; *Chitty on Bills,* 44; 7 *Wheaton,* 35; 5 *Peters R.* 529; *Miller v. Marvin,* 6 *Hill* 115; *Austin v. Vandermack,* 4 *Hill* 290; *Knapp v. McBride,* 7 *Ala.* 19; 17 *Wend.* 47, 524.

*Third.*—The Court erred in charging the jury, that it was incumbent on the Plaintiff in this case under the pleadings to do more than prove the check and acceptance by one of the partners in the name of the firm, and to produce it in evidence in order to establish their *prima facie case. See authorities first above cited.*

*Fourth.*—That the Court erred in charging the jury that

it was incumbent on the Plaintiffs in this case in order to establish their *prima facie* case to show that R. W. Latham, a copartner of the Defendants, accepted the check in the firm name within the scope of the legitimate partnership business of his firm, or with their authority or consent. *See the above cited authorities.*

*Fifth.*—The Court erred in charging the jury, that in this case the obligation of R. W. Latham as drawer of the check was the original and primary obligation, and that the obligation of Defendants as acceptors was secondary and collateral, and that Defendants as acceptors stood in the relation of sureties to the obligation of the drawer. *See authorities cited to second point.*

*Sixth.*—The Court erred in admitting the following portion of the answer of H. B. Sweeney to the third interrogatory in chief, in Plaintiff's second commission, viz: "and Mr. Withers said then he considered it a fraud on the part of Latham, or words to that effect," and in ruling out the following portion of the same answer, viz, "and we considered it a transaction of the house of Selden, Withers & Co." *See Bank of Commerce vs. Selden, Withers & Co.,* 1 *Min. R.* 340, *and cases there cited.*

The following are the points and authorities relied upon by the Counsel for Respondents :

*First.*—The charge of the Judge to the jury must be taken and construed with reference to the facts in the case. *McBride vs. Thompson,* 8 *Ala.* 650; 22 *Ala.* 460; *Hale vs. Darteo,* 10 *Humph.* 92; 12 *U. S. Dig., p.* 562, *sec.* 60; 14 *U. S. Dig., p.* 559, *sec.* 86; 7 *U. S. Dig., p.* 464, *sec.* 23.

*Second.*—The check upon which the suit was brought, having been drawn by R. W. Latham on the firm of Selden, Withers & Co., of which he was a member, and accepted by him at the same time, was *prima facie* evidence, that it was for his own use, and sufficient to cast the *onus* of showing that it was for the use of the firm, or done with their authority, upon the Plaintiffs. *Livingston vs. Roosvelt,* 4 *John.* 251 *to* 278; *Livingston vs. Gaines,* 2 *John.* 200; *Dole vs. Halsey,* 16

*John.* 34; *Foot vs. Salein,* 19 *John.* 154 *to* 159; *Rogers vs. Batcheldor,* 1 *Am. Lea. Cases* 437 *and cases there cited;* 1 *Wend.* 532; 7 *Wend.* 159, 311, 3 *Wend.* 415; 14 *Wend.* 135, 145, 155; 18 *Wend.* 456; 7 *Barb.* 143; 12 *Peters* 221.

*Third.*—That the proof in the case shows that the Plaintiff received the *acceptance* in the same light and to the same end that they received the bond hypothecated with the check, and that Latham gave them both acceptance and bond as security for the payment of the check.

*Fourth.*—The right of the Plaintiffs to recover depends not upon what they "supposed" or "considered" the transaction at the time, but whether there were circumstances to put them on the inquiry attending the transaction. *See authorities cited to point 2d;* 1 *Wend.* 196.

*Fifth.*—Where a demand of payment is made, the response of the party upon whom the demand is made, is of no *res gesta* and as such admissible in evidence; the question of its admissibility resting in the discretion of the Court or Judge. 1 *Greenleaf's Evidence, Sec.* 108; 1 *Phil. on Evidence,* 231 *and* 232; 24 *Miss.* 528; 24 *Pick.* 242; *Murray vs. Bethune,* 1 *Wend.* 196; 14 *U. S. Dig., p.* 277, *Sec.* 288; 2 *U. S. Dig., p.* 253, *Sec.* 1116; 4 *U. S. Dig., p.* 705, *Secs.* 1226, 1309, 1333.

*Sixth.*—There was no error in the charge of the Judge, that in this case it was incumbent upon the Plaintiffs to do something more than to prove the check and acceptance by a member of the firm and to produce the check in evidence to establish their *prima facie* case, and that they must show it to be accepted within the scope of the business of the firm, in as much as evidence of this character was admitted, and therefore the charge could do the Plaintiffs no injury, even if incorrect in law, which it was not. *Millson vs. Riley,* 1 *Dana* 359; 2 *Pick* 145; 5 *Mass.* 1; 5 *do.* 101; 6 *do.* 380; *cases cited to point 2d.*

*Seventh.*—The charge of a Judge from which no injury can arise is no ground of reversal, especially where there have been two verdicts the same way. 9 *Mass.* 436; 7 *Mass.* 297.

*Eighth.*—That the check shows upon its face, that it is not an ordinary business transaction, it being drawn with interest

and Latham's check and Ohio certified bonds hypothecated as collateral; and consequently not negotiable under the law merchant, while facts were sufficient to put the payee on the inquiry and to cast the onus of showing authority on them. *See authorities cited to point 2d.*

*Ninth.*—The excluded answers of H. B. Sweeney, excepted to by the Counsel for the Plaintiff, were properly excluded.

WM. HOLLINSHEAD and H. J. HORN, Counsel for Appellant.

D. COOPER, Counsel for Respondents.

*By the Court*—EMMETT, C. J.   The complaint alleges that R. W. Latham on the 6th day of September, 1853, drew and delivered to the Plaintiffs his check, or bill of exchange, in the words and figures following:

"WASHINGTON, Sep. 6, 1853.

"At one day's notice, Selden, Withers & Co.—Pay to C. E. Rittenhouse, President of Bank of Commerce, or order, accompanied by $5,000 Ches. and Ohio Canal bonds, thirty-five hundred dollars, with interest from date.

"R. W. LATHAM."

It further alleges that the Plaintiffs on the same day presented this check to the Defendants, and they accepted the same by writing across the face thereof, the words, "Good—Selden, Withers & Co.," but that the check, although afterwards duly presented for payment, has not been paid.

The plain language of so simple and ordinary a transaction as is here detailed, is that Latham on his own account and for his own individual use and benefit, drew on the Defendants, with whom he had a credit, or money on deposit, and that the Defendants after having accepted the bill refused to pay it.

The answer of the Defendants puts in issue the drawing of the bill, the presentation for acceptance, and the acceptance by the Defendants.

The case made brings up all the evidence offered on the trial of the action, and it appears from this that Latham was

a member of the firm of Selden, Withers & Co., which was then doing a banking and brokerage business in the City of Washington, D. C.; that on the 6th day of September, 1853, he applied to the Plaintiffs, who were also doing a banking business in the same place, for a loan of $3,500, but it does not appear that he stated at the time anything about the use or purpose for which the money was intended, or on whose account, whether on his own or that of the firm of which he was a partner; that he gave to the Plaintiffs a check on his firm for the amount, drawn and accepted by himself alone; that the check was not in fact presented to the firm of Selden, Withers & Co. for acceptance, but was kept by the Plaintiffs, at Latham's request, he paying the interest for a time, until about the 28th of November, 1854, when Selden, Withers & Co. having failed or suspended, they presented it for payment, and payment was refused, the Defendants refusing to recognize the acceptance which Latham had given; that at the time the Plaintiffs received the check from Latham, he gave to them $5,000 Ches. and Ohio Canal bonds, as collateral security; that the money thus obtained from the Plaintiffs was for the sole use and benefit of Latham, and that he accepted the check without the knowledge or authority of his copartners—nor does it appear that they ever afterwards, directly or indirectly, acquiesced in, recognized or assented to Latham's acceptance, or had any knowledge thereof until the check was presented for payment, some fourteen months after it had been drawn.

The theory which the Plaintiffs contended for, and to the support of which all their testimony was directed, was somewhat different from that established by these facts, and was a wide departure from that naturally suggested by the statement of facts in the complaint.

They claimed that the transaction from beginning to end was with the firm of Selden, Withers & Co., and not with Latham alone; that in the drawing as well as the accepting of the check, they had considered Latham as acting for his firm, and had a right under the circumstances so to consider him as acting, and that they negotiated the check on the

credit of the firm, and not on the credit of Latham alone. Some facts in addition to those above enumerated, were offered to establish these positions, but they do not become material in the view which we have taken of the case. No amendment of the pleadings to make them conform to the facts proved, or to the Plaintiff's theory, was made or indeed asked for.

The Defendants on their part insisted that the transaction was entirely with Latham, and of which the firm was ignorant; that the name of the firm was used by Latham as surety only for his individual debt; that the form of the check itself was sufficient evidence of that fact; that the Plaintiffs were fully aware of the fact; that the attending facts and circumstances were inconsistent with any other theory, and were at least sufficient to put the Plaintiffs upon inquiry, and that they could not therefore recover against the firm without showing the transaction to be within the scope of the partnership business, or showing authority in Latham thus to use the firm name.

The Court charged the jury that in this case, under the pleadings, it was incumbent on the Plaintiffs to do more than prove the check and acceptance by one of the partners in the name of the firm, in order to establish a *prima facie* case; that it should be shown that Latham thus used the firm name within the scope of the partnership business, or with the authority or consent of the firm.

That the obligation of Latham as drawer of the check was the original and primary obligation, while that of the Defendants as acceptors, was secondary and collateral, and that they stood in the relation of sureties to the obligation of the drawer.

This charge of the Court is excepted to and assigned as error. It was doubtless made with reference to the application of the facts proved, to the case made by the pleadings, rather than to the theory before mentioned, upon which the Plaintiffs claimed to recover; and ought to be construed with reference to the whole case as made out by the proofs.

The Plaintiffs were bound by the statement of the case

made by the complaint; that statement treats Latham as the drawer, and just as distinct from the firm of Selden, Withers & Co., the drawees, as though the drawer had been any other person. The presumption is that he drew on his individual funds or credit, in satisfaction, or on account of his own private debt to the Plaintiffs, or in pursuance of some private arrangement or transaction which he alone had with them—and had the facts been different, they should have been so stated. The complaint further asserts that the Plaintiffs themselves presented the check to the Defendants, which of course they could not do until after it had been delivered to them; that the Defendants accepted the same, and the Defendants are sued on this acceptance as drawees, not as original makers, or on account of any connection or interest which they may have had in the original transaction. They would not therefore be liable if they did not accept the check.

It was proved that the check was drawn, but without being presented to the Defendants, was accepted by the drawer himself; and the Judge charged that this was not enough in this case, under the pleadings, unless it was also proved that Latham used the firm name within the scope of the partnership business, or with the authority or consent of the firm.

In this we think the Judge was right. If the transaction on which the check was drawn, or the act of accepting a draft was not connected with, or within the scope of the partnership business, Latham could not bind his copartners by his acceptance without their consent—the Plaintiffs would have no right to presume an authority in him thus to bind his firm, and would be bound to show the authority or consent of the remaining partners.

One of the consequences resulting from a commercial partnership is that each partner has an implied authority to bind the firm in all matters within the general scope of the business in which the firm is engaged; but this implied power does not authorize a partner to bind the firm to any engagement unconnected with and foreign to the partnership; and although in such case the partner himself would be liable, the firm would not be bound without affirmative evidence of the

consent of the other members.   This is the doctrine laid down in *Livingston vs. Roosevelt*, 4 *John.* 251, the leading American case on this subject, and it has been confirmed by numerous decisions since.

It is also well settled by the American decisions, that, where it appears in proof, or by the instrument itself, that a partnership note was given for the private debt of one of the partners, or the partnership name was used for the accommodation of, or as surety of the partner or a third person, and such fact is known to the creditor, or is implied from the nature of the transaction, at the time the note or other instrument is received by him, the burden of proof is thrown upon the creditor to show a previous authority or subsequent consent on the part of the other partners, before they can be charged.   1 *American Leading Cases*, 406, *et seq., and the cases there cited.*

How was it with the case at bar?   It had been shown that the partner who had drawn his individual check on his firm in favor of the plaintiffs, had himself accepted it, without its being presented to the firm.   He had given collateral security to the Plaintiffs, and requested them to retain the check in their possession, so long as they did not need the money, and it was so retained.   The check was drawing interest, and that interest for a time he afterwards paid; and the check required the Plaintiffs when they presented it to the Defendants to transfer to them the securities which the drawer had given.

These were facts very unusual in transactions of this kind, not only fairly implying that the partnership name was used by Latham merely as surety for the payment of his own check, but furnishing little less than positive proof that such was the fact, and known to the Plaintiffs at the time.   The transaction was evidently a loan on time to Latham, for which interest was to be paid, and the acceptance of the firm made by him, was merely in addition to the security already given, and to be used only in case of necessity.   Had it been anything else, the Plaintiffs would not have required security on a check payable at one day's notice, on a house in the same place of good standing, would not have required a check drawing interest, nor would they have suffered it to remain in their hands for more

than a year before presenting it for payment. This is not the ordinary way of transacting so simple a business as the negotiation of a check payable at one day's notice.

And then again, if this was a loan to the firm, and not to Latham alone, why take this circuitous mode to get the obligation of the partnership? Why was Latham bound absolutely, and the firm only upon the contingency of acceptance? Why did the Plaintiffs take upon themselves the useless task, which they aver they did do, of presenting the check to the firm for acceptance? Why notify the drawer of the non-payment, if he was bound at any rate as a member of the firm? And why provide for transferring to the firm the $5000 of canal bonds, if it were not for the purpose of providing them with security in order to induce them to pay the individual check of one of the partners? Business with a partnership is certainly not done in so indirect a manner. Had Latham, instead of drawing the check, given his individual note, payable to his firm, and indorsed it himself in the firm name, it would have presented a case similar in all material respects to that of *Livingston vs. Roosevelt*, before referred to. We can see no reason for any distinction in principle between that case and the one under consideration. There the partner gave his note payable to his firm; here he drew his own check on the house. There, without going to the place of business of the firm, he indorsed the note to the Plaintiffs in the firm name; here, under the same circumstances, he accepts the check in the firm name. In either case the act of the partner was without authority of his copartners. We think that the circumstances attending the present case clearly show the acceptance by Latham was for the benefit of the Plaintiffs and by way of surety for himself; and that this fact must have been known to the Plaintiffs at the time; it is at least clearly implied in the nature of the transaction. The giving of his individual check by Latham was *prima facie* evidence that the transaction was on his own private account. 5 *Watts,* 454; 8 *Metcalf,* 411, 420; 9 *do.,* 454; 21 *Wend.,* 365; 19 *Vermont,* 15. And if the plaintiffs chose without inquiry to assume that it was on account of the firm, they did so at their peril. The fact proves to have been otherwise; and they

cannot recover against the other members of the firm unless they prove that they have assented to the transaction.   19 *John.*, 154, *and cases cited in note (a)*; 1 *American Leading Cases*, 450–1, *et seq.*

Another objection taken is to the ruling of the Judge in regard to the admission of certain testimony.

H. B. Sweeny, one of the Plaintiffs, was examined under a commission, and in answer to a question, requiring him to state whether the check had been presented to the Defendants for payment, and to state when and where it was so presented, *and what transpired thereat*, he said that he had presented the check, at the Defendants' banking house, just previous to its being protested, and went on to say: " Mr. Whiting was the one I saw at the time, and he answered that he did not recognize the transaction, or words to that effect.   I stated to him that the check was taken in good faith by us, *and that we considered it a transaction of the house of Selden, Withers & Co. at the time the check was discounted.*   Mr. Whiting then said that he considered it a fraud on the part of Latham."   The Judge ruled out the portion above italicised, on the objection of the Defendants, but refused when requested by the Plaintiffs to strike out the remaining portion given above.

I have already intimated that we do not, under the state of the pleadings, recognize the right of the Plaintiffs to show that the check was the check of Selden, Withers & Co., and not the individual check of Latham, and therefore that part of the testimony ruled out could have no application to any fact in issue in the case.   Aside from that, the statement is but a mere statement of what the witness informed Whiting had been the understanding of the Plaintiffs, but is no evidence of what that understanding really was.

And as to that part of the witness' answer which the Judge retained, notwithstanding the Plaintiffs' objection, we think it of no more importance than the other, except in one view of the case.   It cannot certainly make the slightest difference in the case whether Mr. Whiting considered the conduct of Mr. Latham in regard to this check, fraudulent or otherwise. His mere opinion could not change the facts, and of course is

of no consequence. But what Mr. Whiting may have said, when payment of this check was demanded of him, as a member of the firm, might be of some importance, and indeed is called for by the very terms of the question asked of the witness. Had Mr. Whiting remained silent under the assertion of the witness, he might be deemed to have acquiesced in its truth, and an inference drawn therefrom to the prejudice of the Defendants.

We see no error in this record, either in the charge of the Court to the jury or in the rulings upon the testimony, and must therefore affirm the judgment with costs.