The State ex rel. Nelson vs. Mott.

THE STATE EX REL. NELSON, Respondent, vs. MOTT, Appellant.

*May 21— June 20, 1901.*

Quo warranto: *Action, by whom brought: City charter construed: Elections by council: "Equal division": Deciding vote.*

1. Under sec. 3466, Stats. 1898, an action of *quo warranto* against a person usurping the office of school commissioner in a city may be brought in the name of the state by a private person.

2. Under a city charter providing that in elections by the common council a majority of the votes of the aldermen entitled to seats in the council shall be necessary for a choice, but that "in case of *an equal division* the mayor may give the deciding vote," the mayor can cast the deciding vote only when the votes of all the aldermen are equally divided between two candidates, and not when, though one candidate has received one half of such votes the remaining votes are divided between other candidates.

APPEAL from an order of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Affirmed.*

*J. C. Kerwin,* for the appellant.

For the respondent there was a brief by *Henry Fitzgibbon, John F. Kluwin,* and *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

CASSODAY, C. J. This is an appeal from an order overruling a demurrer to the complaint in an action to oust and exclude the defendant from the office of school commissioner of the Third ward of the city of Neenah, on the ground that he had unlawfully usurped and intruded into the same. The complaint alleges, in effect, that during the times mentioned the relator was an elector, resident, and taxpayer of the city; that the city was divided into four wards, numbered accordingly; that there were two aldermen from each ward; that by the charter of the city one commissioner for each ward in which the term was about to expire was to be annually elected prior to the 1st day of June, by the common council, voting by ballot, for the term of two years; that in 1898 one John M. Callahan, a duly qualified elector in and for the Third ward, was duly elected such commissioner of that ward, and duly took and filed the oath of office, and on the first Monday of July, 1898, entered upon the discharge of the duties of such office, and continued to exercise such duties to the expiration of his term, in July, 1900; that in May, 1900, the common council from time to time attempted to elect a successor to Cal-

The State ex rel. Nelson vs. Mott.

lahan in such office; that 177 ballots were taken, and upon nearly every ballot the defendant received the votes of four of the eight aldermen, and that the votes of the other four aldermen were scattered and cast for different persons; that on the last ballot, taken May 31, 1900, the defendant, *Wesley Mott*, received four votes, J. M. Callahan three votes, and F. J. Sensenbrenner one vote, whereupon, and after such result of that ballot had been announced, the mayor of the city, presiding over the common council, wrongfully, illegally, and without any authority of law therefor, cast his ballot and voted for *Wesley Mott*, the defendant in this action, and declared him elected school commissioner of the Third ward of the city of Neenah for the term commencing on the first Monday of July, 1900; that thereupon the defendant, *Wesley Mott*, without authority, illegally, wrongfully, on June 1, 1900, took and filed the oath of office of school commissioner of the Third ward of the city of Neenah on the first Monday of July, 1900, wrongfully and without authority of law entered upon the discharge of the duties of said office as such, and usurped and intruded into the office of school commissioner in and for the Third ward of the city, and ever since has unlawfully usurped, held, intruded into, and exercised the same and the duties thereof, and now unlawfully usurps, holds, intrudes into, and exercises the same and the duties thereof; that no successor to Callahan has been elected, and that the office is vacant; that the mayor had no right or authority to give such casting vote, nor to declare the defendant elected to such office, and that his acts in that regard were null and void; that the giving of such casting vote by the mayor was in direct conflict with the provisions of the city charter, which declares that a majority of the votes of the aldermen entitled to seats in the common council shall be necessary to a choice in the election of such officers as are elected by the common council, and that in case of an equal division the mayor may give the deciding vote.

The charter of the city expressly declares that: "The elective officers of said city shall be a mayor, two aldermen from each ward, constituting the common council . . . one school commissioner from each ward," etc. Sec. 5, ch. 184, Laws of 1883. It also declares that: "The mayor and aldermen shall constitute the common council. . . . Five aldermen shall constitute a quorum for the transaction of business, but a smaller number may adjourn to a set time." Sec. 44. The charter also declares that: "All officers of said city not declared elective by this act, and all other officers necessary for the proper management of the city affairs, shall be elected by the common council. All elections by the common council shall be by ballot, and a majority of the votes of the aldermen entitled to seats in the council shall be necessary for a choice. In case of an equal division, the mayor may give the deciding vote." Sec. 13.

The action was properly brought by the relator in the name of the state. Sec. 3466, Stats. 1898.

The charter is therein "declared to be a public act" that "shall be liberally construed in all courts of this state." Sec. 183, ch. 184, Laws of 1883. Counsel for the defendant contends that by such liberal construction it should be held that the four aldermen and the mayor had the power to elect the defendant as such school commissioner. It is conceded, however, that four aldermen and the mayor would have had no power to so elect if there had been only five, six, or seven aldermen present; for in that event there could have been no equal division "of the votes of the aldermen entitled to seats in the common council," as required by the charter. The contention is that as the eight aldermen were all present, and four of them voted for the defendant, and the other four were divided between two other candidates, there was an equal division "of the votes of the aldermen entitled to seats," upon the single proposition whether the defendant should be elected to the office. In other words, counsel contends that there were at the time three propositions pending

before the common council,— one single proposition as to the election of each of the three candidates,— and that every vote not cast for the defendant was effectually cast against him.　But we do not understand that there were any such three separate propositions pending before the common council at the time.　The only question so pending before that body was, Who shall be elected to the office of school commissioner for the Third ward ?　Upon that controversy there was no equal division of the aldermen that could be decided by the casting vote of the mayor.　Counsel contends that the mayor could terminate the controversy by voting for the defendant, as he did; but he concedes that, had the mayor voted for either of the other candidates, then his vote would not have terminated the controversy or decided anything, since the controversy in that event would have continued the same as though he had not voted at all.　It would be a solecism to hold, under the statute quoted, that " the *deciding* vote" of the mayor should only terminate the controversy in case he voted one way, but should have no effect if he voted the other way.　A casting vote, with no power of choosing which way the controversy shall be decided, is not " the deciding vote" prescribed in the charter.

*By the Court.*— The order of the circuit court is affirmed.