STATE ex rel. EDWARD T. YOUNG, ATTORNEY GENERAL v. VILLAGE
OF KENT and Others.[1]

November 17, 1905.

Nos. 14,591—(30).

**Information by Attorney General.**

When the attorney general of the state, acting in his official capacity as the chief law officer of the state, exhibits an information in the nature of quo warranto to the district court, and asks that a writ issue, directed to a municipal corporation, requiring it to show cause why its franchise should not be declared null and void, the court has no discretion, but must grant leave to file the information as a matter of course and direct the writ to issue. Upon the return it is the duty of the court to try the issues of law and fact presented thereby, and to determine the same upon the merits according to rules of law applicable thereto.

**Application to Supreme Court.**

When an application in a proceeding of this character is made by the attorney general to the Supreme Court, instead of to the district court, that court will exercise the discretion given it by statute, and determine whether it is a case in which the writ should issue out of that court. If in its judgment the application should have been made to the district court, leave to file the information will be denied.

Appeal by relator from an order of the district court for Wilkin county, Flaherty, J., vacating a writ of quo warranto previously issued by that court upon relation of the attorney general, and dismissing the proceedings. Reversed.

*Edward T. Young,* Attorney General, *Edward Balentine* and *Jones & King,* for appellant.

*J. W. Mason* and *Purcell, Bradley & Divet,* for respondents.

ELLIOTT, J.

This is an appeal by the state of Minnesota from an order of the district court vacating and setting aside an order permitting the institution of proceedings in quo warranto against the village of Kent and its officers and trustees.

[1] Reported in 104 N. W. 948.

The writ was issued upon an information exhibited by the attorney general of the state, acting ex officio on behalf of the public, and not upon the relation of a private relator. It recited that because of certain irregularities, therein fully set forth, the village had never been legally incorporated, and that the pretended incorporation had no force or effect. The writ was duly issued on May 17, 1905. On June 5 the respondents moved to dismiss the information and writ on the grounds (1) that the court had no jurisdiction in the premises, and (2) that the cause of action was not a proper case for quo warranto in the district court, and that by reason of special and exceptional circumstances involving the corporate existence of a municipal corporation and the interest and convenience of the public, application for said writ should have been made to the Supreme Court of the state. The writ had been made returnable on that date, and a motion seems then to have been made to dismiss the information on the ground (1) that it was not a proper case for quo warranto in the district court, and (2) that the order permitting the issue of the writ had been inadvertently made without consideration and without the court having exercised any discretion therein. The motion was granted upon both grounds.

The state contends that the trial court erred in granting this motion, because (1) it had full and complete jurisdiction and (2) the attorney general had the right to institute the proceedings without the consent of the court, and (3) even if the court had any discretion in the matter, having once issued the writ, its discretion was exhausted, and it was then its duty to hear and determine the cause upon the merits.

1. We do not understand counsel for the respondents to seriously contend that the district court was without jurisdiction to entertain and determine this proceeding. Chapter 80, § 1, R. S. 1851, abolished the writ of quo warranto and proceeding upon information in the nature of quo warranto; but that statute was repealed by chapter 122, G. S. 1866, which revived the writ as a common-law writ to be issued in a proper case by the district court, as the court of general original jurisdiction, the historical successor of the Court of King's Bench. State v. Otis, 58 Minn. 275, 59 N. W. 1015; State v. Lockerby, 57 Minn. 411, 59 N. W. 495.

This court also has original jurisdiction in quo warranto, but the constitution and statutes recognize the desirability that such proceed-

ings should ordinarily be instituted in the lower courts. Under § 4823, G. S. 1894, the Supreme Court will not order the writ to issue when "there is a remedy in the district court at all adequate."

Section 4823, G. S. 1894 (G. S. 1878, c. 63, § 1), which provides for the exercise of the jurisdiction authorized by article 3, § 1, of the constitution, empowers the Supreme Court to issue quo warranto writs, "subject to such regulations and conditions as the court may prescribe." These conditions are prescribed in State v. Otis, supra, where it was said: "This court will not grant such an application if there is a remedy in some other court which is at all adequate, unless under special and exceptional circumstances, as, for instance, that there will be great injury or inconvenience to the public by reason of the delay and uncertainty caused by commencing in the lower court and awaiting a final determination on appeal to this court." State v. Dowlan, 33 Minn. 536, 24 N. W. 188; State v. Gates, 35 Minn. 385, 28 N. W. 927; State v. Moriarty, 82 Minn. 68, 84 N. W. 495.

But it will be noted that it is the discretion of this court, and not that of the district courts, which is referred to in the statute. The jurisdiction of the Supreme Court being to a certain extent voluntary, it may decline to order the writ to issue in a case which comes within the conditions, even though the district court, under the same circumstances, would have no right to refuse it. The law which confers original jurisdiction upon this court expressly authorizes it to define the conditions under which it will be exercised; but the jurisdiction is conferred on the district courts without any such limitation. Their jurisdiction is complete, and in the exercise thereof they have a judicial discretionary power to grant or refuse leave to file informations in the nature of quo warranto when applied for by individuals.

2. It is further contended that, even if the court had any discretion in the matter of allowing the information to be filed and the writ to issue, it was exhausted when the court once exercised its discretion and allowed the information to be filed and the writ to issue, and nothing thereafter remained for it to do but try and determine the issues of law and fact in accordance with the rules of law as in ordinary cases.

In People v. Regents, 24 Colo. 175, 49 Pac. 286, Mr. Justice Campbell said: "The authorities seem to be unanimous that, when once the discretion of the court in which the proceeding is brought has been

exercised and, permission given to relator to file an information, such discretion is exhausted, and may not be recalled; but, on the contrary, the court must then proceed to determine the controversy the same as any other upon the law and the facts." In 2 Spelling, Ex. Rem. § 1777, it is said: "Where, however, the court has in the exercise of its discretion permitted the information to be filed, its discretionary power is thereby exhausted, and the issues of fact and law as presented must at the trial be determined according to the strict rules of law as in ordinary cases." In State v. Brown, 5 R. I. 1, the court said: "The discretion to allow in such a case the filing of an information of this character is, as we apprehend, all the discretion which courts * * * of authority justify. When the information is filed, all the discretionary power of the court is expended." To the same effect are High, Ex. Leg. Rem. (3d Ed.) § 606; People v. Golden Rule, 114 Ill. 34, 28 N. E. 383; People v. Paisley, 81 Ill. App. 52; Place v. People, 83 Ill. App. 84; State v. Elliott, 13 Utah, 200, 44 Pac. 248; State v. Shank, 36 W. Va. 223, 230, 14 S. E. 1001. And see Rex v. Brown, 4 T. R. 276.

Mr. Justice Campbell's statement that the authorities seem to be unanimous is hardly correct, as there are cases which hold that this discretionary control remains with the court until the case is finally determined, and that where leave is improvidently given the court may, upon the hearing, refuse relief upon the same grounds upon which it might originally have refused leave to file the information. People v. Commissioners, 31 Ill. App. 219, 223; People v. Hamilton, 24 Ill. App. 609; State v. Hoff, 88 Tex. 297, 31 S. W. 290; State v. Claggett, 73 Mo. 388.

We are of the opinion that the court exhausts its discretion when it exercises it upon the preliminary application for leave to file the information. This presumes, however, that the court actually exercises its discretion, and does not deprive it of the right to dismiss the proceedings if it subsequently appears that it acted improvidently or through inadvertence and under a misapprehension of facts. Gilroy v. District Attorney, 105 Pa. St. 484; Commonwealth v. Kistler, 149 Pa. St. 345, 24 Atl. 216. Under such circumstances no judicial discretion is exercised.

3. But has the court any power to refuse to allow the information

to be filed in a case such as the record here discloses? This question cannot be answered intelligently without some consideration of the origin and development of the writ of quo warranto and the information in the nature of the writ of quo warranto, and also of the practice and procedure at common law and under the early English statutes, which were a part of the common law as it was adopted in this country. The historical phase of the subject will be found somewhat extensively presented in State v. Elliott, 13 Utah, 200, 44 Pac. 248, State v. Ashley, 1 Ark. 279. High, Ex. Leg. Rem. (3d Ed.) § 605, and in Blackstone, Com. bk. 3.

A very brief résumé only is sufficient to show beyond the possibility of doubt or cavil that the ancient writ of quo warranto and the information in the nature of quo warranto at common law is and always was a writ of right at the instance of the attorney general ex officio, as the representative of the crown, commonwealth, or state. As said by Chief Justice Comegys, the writ of quo warranto had its "existence in the womb of the common law before the time of the Crusades, although never appearing upon the statute books, as aided by parliamentary provision for its exercise until the time of the first Richard." State v. Stewart, 6 Houst. (Del.) 359.

It issued out of Chancery, and was returnable at first before the King's Bench at Westminster, and at a later period before the justices in eyre. When these justices were displaced by the judges on the various circuits, the writ became again returnable before the justices at Westminster. In the unusually felicitous words of Coke, "with justices in eyre this branch lived, and with them it died." This was the ancient writ, a writ of right for the king, against him "who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim, in order to determine the right." Blackstone, bk. 3, c. 12, p. 5. The procedure upon this writ was complicated and cumbersome, and this, in connection with the fact that the judgment was conclusive, even against the crown, led to its abandonment and the introduction of the information in the nature of quo warranto. The ancient writ was a purely civil proceeding, and the judgment never involved more than seizure of the franchise by the crown. The information which took its place was a criminal proceeding, and involved fine and imprisonment, as well as the ouster of the defendant from the

usurped franchise. It lost this character, however, long before the American Revolution, although the form of a criminal proceeding was retained in England until St. 47 & 48 Vict. c. 61, par. 15, which provided that "proceedings in quo warranto shall be deemed to be civil proceedings whether for purposes of appeal or otherwise." In some of the states the old form is still retained, and informations of this character are in form criminal, although in substance purely civil.

The ancient writ thus became obsolete in England, and the proceeding by information in the nature of quo warranto came into use. Informations in the nature of quo warranto were either (1) such as were filed by the attorney general ex officio on behalf of the crown, or (2) those exhibited by the master of the Crown Office on the relation of some private individual. The abuse of the right which the master of the Crown Office exercised of filing such informations on his own discretion at the instance of private persons who were not named as relators led to the enactment of St. 4 & 5 Wm. & Mary, c. 18, which made it necessary for a person who desired to file such an information to obtain permission to do so from the court and enter into a recognizance for the sum of £20. Rex v. Hertford, 1 Salk. 376. This statute was restrictive in its operation, and the purpose was to restrict the powers of the master of the Crown Office to vex and oppress the king's subjects. It will be noted that the act in no way restrained or restricted the power of the attorney general when acting ex officio on behalf of the general public. It related solely to proceedings sought to be instituted by the master of the Crown Office at the instigation of private individuals. This is also true of the famous St. 9 Anne, c. 20, the substance of which has been embodied in so many American statutes relating to the subject of quo warranto. As we have seen, the former act was restrictive, but the statute of Anne was enacted for "rendering the proceedings upon writs of mandamus and informations in the nature of quo warranto more speedy and effectual and for the more easy trying and determining the rights of officers in franchises and boroughs."

In contrasting these two statutes, Mr. Justice Wilmot, in Rex v. Trelauney, 3 Burr. 1616, said "that the two acts of Parliament (St. 4 & 5 Wm. & Mary, c. 18, and St. 9 Anne, c. 20) relate to quite different objects and are the reverse of each other. The former restrains the

clerk of the crown in this court [King's Bench] from exhibiting or filing informations without leave of the court in cases where all the king's subjects might, before the making of that act, have made use of his name without such leave. The latter lets in everybody who desires it to make use of his name in prosecuting usurpers of franchises, whereas before no subject could have done so; but it provides that these informations, as well as those for misdemeanors, must be under leave and discretion of the court. Therefore the court ought not to give such leave without sufficient reason."

We thus find that the common law as we received it provided for the information in the nature of quo warranto in two classes of cases, and that these two classes included (1) those filed by the attorney general ex officio on behalf of the crown, and (2) those allowed by the court to be exhibited by the master of the Crown Office at the instance of a private individual. The second class includes (a) those relating to corporate franchises, which were the most numerous, and to which alone St. 9 Anne, c. 20, applied, and (b) all others exhibited at the instance of private relators.

The ancient common-law writ of quo warranto was a writ of right for the king, and issued as of course at the instance of the attorney general. 4 Blackstone, 312; Abbot of Strata Mercella, 5 Coke, 40; Rex v. Phillips, 4 Burr. 2090; Rex v. Staverton, Yelv. 190, 1 Bulst. 54; Whelchel v. Wiley, 76 Ga. 644, 647. After the ancient writ was displaced by the information in the nature of quo warranto, no one, so far as we have been able to discover, ever questioned the right of the attorney general to appear ex officio as the representative of the Crown, institute the proceedings without leave of court, and have the questions raised determined on their merits according to the laws applicable thereto. Rex v. Philipps, 3 Burr. 1565, per Lord Mansfield.

The early authorities are uniformly to this effect. Thus: "Quo warranto is in the nature of a writ of right for the king, against him who usurps or claims any franchises or liberties to say by what authority he claims them." Comyns, Dig. 190. "It seems to be the established practice at this day not to admit of the filing of any information (except those exhibited in the name of his majesty's attorney general) without first making a rule on the persons complained of to show cause to the contrary." Bacon, Abr. Tit. "Information" (d). "In-

formations in the nature of quo warranto," says Cole, "may be divided into two classes, viz.: (1) Informations exhibited by and in the name of the attorney general ex officio, without any relator, and which are filed without leave of the court, or any recognizance being entered into; (2) informations exhibited to and in the name of the queen's coroner and attorney, at the instance of a relator, or relators, which cannot in any case be filed without previous leave of the court." Cole, Inf. 113. "Ex officio informations are filed by the attorney general in his own name, without any relator, without leave of the court, and without any recognizance." Heard's Shortt, Ex. Rem. 112. "As regards the necessity of applying for leave of court before filing the information, a distinction is taken between cases where the proceedings are instituted by the attorney general, ex officio and without any relator, and cases where they are brought upon the relation of a private citizen. In the former class of cases the information is filed as of course, without leave of court; but in the latter class the information may be filed only by leave of court first had and obtained for that purpose, and the application is not granted as of course, but rests in the sound discretion of the court." High, Ex. Leg. Rem. (3d Ed.) § 707.

It may be noted in passing that at common law, when the information is filed by the attorney general, no relator need be named (2 Selwyn, N. P. [9th Ed.] 1165, Bullen, N. P. 207; Territory of Minnesota v. Smith, 3 Minn. 164 [240]; Bartlett v. State, 13 Kan. 99; State v. Sharp, 27 Minn. 38, 6 N. W. 408) and that the mention of a relator under such circumstances is merely surplusage, which will be rejected (Dennison, J., in Rex v. Williams, 1 Burr. 408; People v. Sutter, 117 Cal. 604, 49 Pac. 736). In King v. Trevenen, 2 B. & Ald. 479, Chief Justice Abbott said: "Where a corporation acts contrary to the franchises which have been granted to it, and invades the rights of the crown, the attorney general of his own authority, and without any application to this court for leave, may exhibit an information against them."

Where the common-law procedure prevails either by statutory enactment or adoption by the courts, the authorities in this country uniformly sustain the right of the attorney general to the writ, when the information is filed by him in his official character as the representative of the state. In the recent case of Meehan v. Bachelder (N. H.)

59 Atl. 620, Bingham, J., said: "The attorney general ex officio has the right to bring an information in the nature of a quo warranto to try the title to a public office, and is not compelled to ask leave of the court." In Vanatta v. Delaware, 38 N. J. L. 282, Justice Dixon said: "When facts exist which, in the opinion of the attorney general, call for a quo warranto information, he has the right to present it, without leave asked of any one. In that respect he represents the sovereignty, whose attorney he is. Such power existed unquestionably at common law, and neither the statute of 9 Anne nor our own statute in any way abridged it. Before 9 Anne quo warranto informations were filed either by the attorney or solicitor general ex officio, or by an officer of the court under the direction of the court, at the instance of parties concerned. Such officer, in the King's Bench, was the master of the Crown Office. The statute of 9 Anne merely regulated the practice in some cases of this latter class, requiring the parties concerned to be named as relators and to become responsible for costs, etc.

"Our statute substitutes the attorney general for this master of the Crown Office, and extends the range of the act; but in such case the attorney general is only nominally a party, a mere officer of the court, subject to its control. He is not there as attorney general, exercising in the cause that power which such officer had at common law and which he still wields when he appears ex officio."

In State v. Seymour, 67 N. J. L. 482, 51 Atl. 719, it was held that when the attorney general ex officio files an information in the nature of a quo warranto, the leave of court to file is not necessary. The court said: "This proceeding must be regarded as under our statute of 1795 (Gen. Stat. p. 2632), which is copied substantially from the statute of 9 Anne, c. 20." State v. Paterson, 21 N. J. L. 9. And see Gibbs v. Somers Point, 49 N. J. L. 515, 10 Atl. 377. In State v. Elliott, 13 Utah, 200, 204, 47 Pac. 248, it was said that an officer representing the state has the right to file an information as of course, without leave of court. In Commonwealth v. Allen, 128 Mass. 308, Chief Justice Gray said: "This is an information at common law * * * for the usurpation of an office, which the attorney general has the right to file ex officio in the name and behalf of the commonwealth at his own discretion, and leave to file which the court has no authority to grant or withhold, and the mention of relators is mere surplusage, and does not affect the

validity of the information or the form of the judgment to be rendered thereon." Attorney General v. Sullivan, 163 Mass. 446, 40 N. E. 843. In Haupt v. Rogers, 170 Mass. 71, 48 N. E. 1080, the court said: "This court has no authority to direct the attorney general to file an information in the nature of a quo warranto. He is not an officer of the court, but an officer of the commonwealth, and in the performance of his official duties he is not subject to the direction of the court. In Goddard v. Smithett, 3 Gray, 116, the court explain the practice of the Court of King's or Queen's Bench in England in directing the master of the Crown Office to file an information in the nature of a quo warranto on application of a private person. The court there say: 'But there being no corresponding office or officer in this commonwealth, having authority at common law to prosecute in the name and behalf of the public, and at the same time an officer of this court and subject to its orders and directions, no corresponding practice could prevail here.' The court also say of such an information that, 'when filed by the attorney general, it is done at his own discretion, according to his own view of the rights of the government, without leave of court, nor will the court direct or advise him on the subject.' "

Quo warranto is a writ of right for the commonwealth against one who usurps or claims franchises or liberties. Commonwealth v. Dillon, 81 Pa. St. 41; Com. v. Walter, 83 Pa. St. 105. In State v. Gleason, 12 Fla. 210, 225, where the history and use of the writ of quo warranto received elaborate consideration Justice Westcott said: "The office of attorney general is, in many respects, judicial in its character, and he is clothed with a considerable discretion. The appropriate and proper function of courts is to hear causes that the citizen of the state may see proper to institute, and there are but few cases in which they can exercise a discretion to refuse to hear them. The attorney general being intimately associated with the other departments of the government, being as well the proper legal adviser of the executive as the legislative department of the government, it is highly proper, whenever the right to a public office is to be tried, that he should be clothed with a discretion in the premises which should be exercised independently of the courts in actions of this character. * * * This discretion is vested in the attorney general. If he exercises it improperly, there

is another tribunal, the people, or their grand inquest, the assembly,. to punish him."

In Missouri it has long been the established rule that the attorney general may ex officio file an information in the nature of a writ of quo· warranto without leave of court as a matter of course. "It is the set-- tled law of this state," said Justice Sherwood, in State v. Equitable,. 142 Mo. 325, 41 S. W. 916, "that such officer can, of his own motion; and without leave of this court, file an information in quo warranto, and take all other subsequent and necessary steps to have such cause thus instituted passed upon and determined. State v. Bernoudy, 36 Mo. 279; State v. McAdoo, 36 Mo. 452; State v. Steers, 44 Mo. 223 ;. State v. Bishop, 44 Mo. 229; State v. Townsley, 56 Mo. 107; State· v. Rose, 84 Mo. 198; State v. McMillan, 108 Mo. 153, 18 S. W. 784.. See also Short, Mand. 175; High, Ex. Leg. Rem. (3d Ed.) § 45, and cases cited. This has been the rule of this state ever since State v.. Merry, 3 Mo. 278." See also State v. Lindell, 151 Mo. 162, 52 S. W. 248; State v. Balcom, 71 Mo. App. 27; State v. Bland, 144 Mo. 534,. 46 S. W. 440; State v. Berkeley, 140 Mo. 184, 41 S. W. 732; State v.. McSpaden, 137 Mo. 628, 39 S. W. 81; State v. Town of Mansfield, 99· Mo. App. 146, 72 S. W. 471.

The control of the attorney general over such proceedings is recognized in State v. Agee, 105 Tenn. 588, 59 S. W. 340. See also People· v. Regents, 24 Colo. 175, 49 Pac. 286, and State v. Deliesseline, 1 Mc-Cord (S. C.) 52. In State v. Brown, 5 R. I. 1, Chief Justice Ames said: "The information in this case was filed by the attorney general by virtue of the inherent authority of his office. * * * It is very true that in cases in which a private relator moves, as he may, to be permitted to use the name of the state for the purpose of inquiring by what warrant an individual holds and exercises a public office, the motion is subject to the regulated discretion of the court. The necessity, the policy, of making the inquiry, and even the position and motives of the relator in proposing it, are all matters considered by the court, in the exercise of their discretion in granting such a motion, since a court of justice will not allow the name of the state to be used and its own time to be occupied, improperly or unnecessarily, or merely to feed the grudge of a relator who has no interest in the matter of inquiry, to the disturbance of the public peace." See Attorney General

v. Lorman, 59 Mich. 157, 26 N. W. 311; Commonwealth v. Walter 83 Pa. St. 105, 107 (leave necessary when the attorney general merely allows private counsel to use his name); McDonald v. Board, 91 Mich. 459, 51 N. W. 1114; People v. Hartwell, 12 Mich. 508, 522; State v. Seattle, 28 Wash. 488, 68 Pac. 946, 70 Pac. 114.

It is thus apparent that, subject to the requirements of particular statutes regulating the procedure in quo warranto, the general rule in this country is substantially that of the common law after St. 9 Anne, c. 20. The only case to which our attention has been called which directly sustains the contention of respondent is State v. Leatherman, 38 Ark. 81, in which the court sustained a demurrer to an information exhibited by the attorney general on the ground that the state had by acquiescence lost the right to question the legal existence of the respondent corporation. It was admitted that "to apply this discretion to proceedings on the part of the state herself, without any private relator," was a departure from the general rule.

Other cases cited by the respondent are not in conflict with the rule as we have stated it. Attorney General v. Erie, 55 Mich. 15, 20 N. W. 696, was a proceeding to forfeit the charter of a private corporation, and was plainly controlled by the terms of the statute. Justice Campbell said: "The statute now in force on the subject of quo warranto requires leave before such an information is filed and makes the granting here, as in England, discretionary." This is also true of Capital City v. State, 105 Ala. 406, 18 South. 62. In Lamoreaux v. Ellis, 89 Mich. 146, 50 N. W. 812, the court exercised the power to require the attorney general to set the machinery of the law in motion, and upon a proper and prima facie showing to file an information in the nature of quo warranto to test the right of an incumbent to the office of sheriff. A similar control over the attorney general's discretion in permitting such proceeding to be instituted was exercised by the court in State v. Dahl, 69 Minn. 108, 71 N. W. 910.

But these cases both arose on the attempt of a private citizen to induce the attorney general to act. They were instances of the class over which the courts have exercised discretionary control ever since the statute of Anne was enacted. That the Lamoreaux case falls within this class clearly appears from the quotation there made from Vrooman v. Michie, 69 Mich. 42, 36 N. W. 749, where the court said: "Courts

can never act, unless upon some reasonable showing, and, as it is contrary to public policy to allow persons to be needlessly annoyed by vexatious claims, the statute which has long existed in England, while it allows the public representative, who is the attorney general or some other high official, to proceed ex officio, does not, as construed, permit a relator to proceed without exacting a very precise and positive showing." State v. McLean, 11 N. D. 356, 92 N. W. 385, also grew out of a contest between the attorney general and a private relator. State v. City of Des Moines, 96 Iowa, 521, 65 N. W. 818, was brought upon the relation of an individual. People v. Sutter, 117 Cal. 604, 49 Pac. 736, arose upon an information filed by the attorney general upon the relation of a private person, and it was held that the attorney general could not thereafter himself dismiss the proceedings without an order of court.

The distinction between proceedings by the attorney general and those sought to be commenced by private relators being thus clearly defined at common law, both before and after the statute of Anne, it remains to be seen whether the common-law practice has been changed by the statutes and decisions of this state. A careful examination leads us to the conclusion that the common-law procedure, but slightly modified, prevails in this jurisdiction.

Article 6, § 2, of the state constitution confers original jurisdiction upon the Supreme Court "in such remedial cases as may be prescribed by law." For the purpose of giving effect to this provision the legislature enacted a statute (G. S. 1878, c. 63, § 1; G. S. 1894, § 4823) which recites that

> The Supreme Court has power to issue writs of error, certiorari, mandamus, prohibition, quo warranto, * * * subject to such regulations and conditions as the court may prescribe.

In State v. Sharp, 27 Minn. 39, 6 N. W. 408, it was held that proceedings under this statute are governed by the rules of the common law. "This," said Justice Berry, "is a proceeding by information in the nature of quo warranto under G. S. 1878, c. 63, § 1. It is not the action provided for in chapter 79 of said statutes, and the provisions of that chapter are not per se applicable to it. In the absence of any legislation or controlling considerations to the contrary, it follows that, as respects

procedure, it is governed by common-law rules. High, Ex. Leg. Rem.
(3d Ed.) §§ 629, 712, and cases cited; 2 Dillon, Mun. Corp. §§ 717,
722; 5 Wait, Pr. 615; People v. Pease, 30 Barb. 588, 591." See also
Territory v. Ashenfelter, 4 N. M. 93, 12 Pac. 879; State v. Stewart,.
6 Houst. (Del.) 359, 372. In State v. Tracy, 48 Minn. 497, 51 N. W.
613, Justice Vanderburgh says: "The term 'quo warranto,' used in that
section [referring to the statute], must be deemed to refer to 'an infor-
mation in the nature of quo warranto' as existing at the common.
law"—citing State v. West Wisconsin, 34 Wis. 197, 208, 213.

Chapter 79, G. S. 1878 (G. S. 1894, §§ 5961–5973) provides for
another, remedy, which somewhat enlarges the functions of the com-
mon-law action and embodies some of the features of quo warranto.
informations. It is a civil action, and not a special proceeding.
It provides that the attorney general may in the name of the state
bring an action (1) for vacating the charter or annulling the existence
of a corporation, other than municipal, whenever such corporation.
offends in certain ways, and (2) for the purpose of annulling and
vacating certain letters patent granted by the state under certain condi-
tions. It also provides for the bringing of an action in the name of the
state by the attorney general, on his own information or on the com-
plaint of a private party, against the party offending in the following
cases: (1) When any person usurps, intrudes into, or unlawfully holds.
or exercises any public office or franchise within this state, or (2) any
office in the corporation created by the authority of this state, or (3)
when any public officer has done or suffered any act which by the pro-
visions of law cause a forfeiture of his office, or (4) when any associa-
tion or number of persons act within this state as a corporation without.
being duly incorporated; and the attorney general may bring the
action whenever he has reason to believe that any of these acts can be
proved. It is further provided that, when an action is brought by the
attorney general, by virtue of this chapter, on the complaint or informa-
tion of any person having an interest in the question, the name of such
person shall be joined with the state as plaintiff. This statute does not
expressly provide that the attorney general shall obtain leave of court
to bring the action, but it is apparent that the statute embodies some of
the provisions of the statute of Anne, and the court has adopted a

practice very similar to that in force in the English courts and in various states of the Union under that act.

A proceeding under section 1, c. 63, G. S. 1878 (G. S. 1894, § 4823), is the common-law information in the nature of quo warranto, as it was known and used in England after the enactment of St. 9 Anne, c. 20, and long before the date when English statutes were embodied in the common law which became a part of the law of this country in 1776. This common law clearly distinguished between proceedings by the attorney general ex officio and proceedings on the relation of a private person with the consent of the attorney general.

Turning, now, to the decisions of this court we find the same distinction clearly recognized in all the cases. Territory of Minnesota v. Smith, 3 Minn. 164 (240), was a proceeding under R. S. 1851, at a time when the writ of quo warranto and information in the nature of quo warranto did not exist in this jurisdiction. State v. Parker, 25 Minn. 215, was an action under chapter 79, instituted by the attorney general, on behalf of the state, on the relation of a private citizen to oust the respondent from an office. State v. Sharp, 27 Minn. 38, 6 N. W. 408, was instituted under chapter 63, on the relation of a private individual, with the approval of the attorney general. It was not instituted by the attorney general ex officio, but the court recognized his general control over the proceedings. In reference to the suggestion that the relator had acquiesced in the proceedings and was therefore estopped to proceed, Justice Berry said: "The answer to this is that it is the attorney general who has instituted and who is conducting the proceeding as the law officer of the state, the representative, not of the relator, but of the government. It is for him to determine whether the public good requires him to proceed. * * * Notwithstanding any conduct of the party at whose instance he moves, if there is any case in which his determination would be overruled, it must certainly be a very extraordinary one, and not such a case as this."

The case belongs to the class, well known at common law and provided for by the statute of Anne, in which the control of the proceedings is intrusted very largely to the court. In State v. St. Paul & S. C. R. Co., 35 Minn. 222, 28 N. W. 245, the question of the original jurisdiction of the Supreme Court in quo warranto proceedings was

raised and determined. The court said: "As between the remedy in this court by quo warranto and that by action in the district court, it is for the attorney general, to whom the interests of the state in such cases are intrusted, to determine which he will pursue." State v. Minnesota Thresher Mnfg. Co., 40 Minn. 213, 41 N. W. 1020, was upon an information in the nature of quo warranto filed by the attorney general ex officio. It was contended by the respondent that the attorney general had filed a disclaimer of any interest in the proceedings. Justice Mitchell said: "An inspection of the statement filed by him will show that it will bear no such construction. As such proceedings are in the nature of a public prosecution, having for their object the recovery to the state of a usurped or forfeited franchise, and not to redress private grievances, no one but the attorney general has authority to institute or prosecute them; it being exclusively for him to determine when public interests require them to be instituted. Therefore, had he moved to dismiss, as he had the undoubted right to do, or had he stated that this was not a case which public interests required to be prosecuted, we would undoubtedly have dismissed, notwithstanding objections by private parties. But the attorney general having done neither, and the information being filed by him in his official capacity, this court did the only thing it could do under the circumstances, viz., to entertain the proceedings and determine them according to law."

State v. Dowlan, 33 Minn. 536, 24 N. W. 188, was an application by a private relator for leave to file an information in the nature of quo warranto. The application was denied. "We are also agreed," said Chief Justice Gilfillan, "that the granting of leave to file an information (especially upon the application of a private person) is within the discretion of the court, and that leave ought not to be granted where the law furnishes another remedy, unless under special and exceptional circumstances." This general statement must, of course, be read in the light of the facts of the case there under consideration. In State v. Tracy, 48 Minn. 497, 51 N. W. 613, the proceedings were instituted by a private relator in the name of the state with the consent of the attorney general. The object was to test the right of the respondent corporation to exercise the corporate franchise. It was held that the writ would not lie for such a purpose at the instance of a private party, that it must be presented and subscribed by the attorney general on behalf of the

state, and that it was not enough that it was prosecuted with his formal approval. State v. Lockerby, 57 Minn. 411, 59 N. W. 495, and State v. Otis, 58 Minn. 275, 59 N. W. 1015, were both cases in which private relators sought to use the name of the state to have determined private rights, in which the state was but remotely concerned. In State v. Dahl, 69 Minn. 108, 71 N. W. 910, an appeal by a private person, with no special interest, for leave to file an information in the nature of a quo warranto, was denied because the attorney general had refused to give his consent. See Pound v. Attorney General, 119 Mich. 528, 78 N. W. 541, for a similar proceeding. State v. Dahl, supra, State v. Sharp, supra, and other such cases, show that, while the court always gives great consideration to the views of the attorney general, it exercises discretionary power over the matter of allowing the information to be filed and the writ to issue when the right to be determined affects individuals only and the attorney general does not appear ex officio.

In State v. Moriarty, 82 Minn. 68, 84 N. W. 495, the petition was signed by the attorney general, but was presented to the court by the attorney for the private relator. The court said: "Ordinarily, when the attorney general asks that the writ issue, we assume, unless the contrary appears from an inspection of the information, that public interests require that the writ issue. This is due to him as the head of the legal department of the state, charged with the duty of representing the interests of the state before this court. But where, as in this case, the application for the writ is made by the attorney of the relator, the attorney general consenting, but not participating, it is our duty upon our own motion to scrutinize the petition and deny the writ, unless it affirmatively appears from allegations of the petition that public interests require that it be issued."

The principle is thus firmly established in this state that the granting or withholding of leave to file an information at the instance of a private relator, or of a private relator with the consent of the attorney general, to test the right to an office or franchise, rests in the sound discretion of the court to which the application is made, even though there is a substantial defect in the title by which the office or franchise is held. High, Ex. Leg. Rem. (3d Ed.) § 605; Goodnow, Prin. Adm. Law, 430. See State v. McLean, 11 N. D. 356, 92 N. W. 385; Commonwealth v. Cluley, 56 Pa. St. 270; Ohio v. Waechter, 25 Oh. C. C.

·605; State v. Mott, 111 Wis. 19, 86 N. W. 569, under section 3466, R. St. (1898, Wis.); People v. Commissioners, 193 Ill. 428, 62 N. E. 225.

The information in the nature of quo warranto, as it exists in Minnesota, is thus substantially that known in England after the enactment of St. 9 Anne, c. 20. State v. Minnesota Thresher Mnfg. Co., 40 Minn. ·213, 225, 41 N. W. 1020. Neither this statute nor St. 4 & 5 Wm. & Mary, c. 18, were ever held to apply to informations exhibited by the attorney general ex officio. 3 Stephen, Nisi Prius, 2432; 2 Tomlin, L. D. 195; Westcott, J., in State v. Gleason, 12 Fla. 190, 217.

It follows that the trial court erroneously dismissed these proceedings. The information was exhibited by the attorney general in his ·official capacity as the principal law officer of the state in a proceeding brought by the state to require a municipal corporation to show cause ·why its pretended incorporation should not be declared illegal and void. Upon the presentation of the information containing allegations sufficient to make a prima facie case, the court should have ordered the writ to issue as of course, and thereafter determined the issues of law and fact upon the merits as in ordinary proceedings.

The judgment appealed from is therefore reversed.